IRISH-AMERICAN BANK *vs.* JOHN LUDLUM.    *First Case.*

Argued Dec. 7, 1891. Decided April 7, 1892.

**Assignments of Error Overruled.**—Several assignments of error directed to the rulings of the court below when receiving or excluding testimony, and also when charging the jury, considered and disposed of.

**Verdict Supported by the Evidence.**—The verdict in plaintiff's favor was supported by the evidence.

Appeal by defendant, John Ludlum, from an order of the District Court of Hennepin County, *Hicks*, J., made June 2, 1891, refusing his application for a new trial of this action.

Action brought by the Irish-American Bank of Minneapolis upon two promissory notes signed "New York Pie Company by E. J. White, manager," payable to the order of A. P. Thompson, and by him indorsed to the bank before maturity. Who it was that was doing business under this name was the principal question in this action. Eri P. White started the business in the spring of 1885 at 1602 Lyndale Avenue, Minneapolis, in a building which he rented of defendant at $125 per month. Eugene J. White was his brother, and worked for him in the business of baking and selling cakes and pies.

On May 27, 1886, defendant bought out Eri P. White, paid him $1,900, and took from him a bill of sale of the property used in carrying on the business, including boiler, ovens, and tools in the building, and the wagons, sleighs, horses, and harness used in delivering to customers. Defendant then orally agreed with Eugene J. White that he should manage the business, and when he should be able to repay, from its profits, the money so paid by defendant to Eri P. White for it, the defendant would sell the property and business to him. Eugene J. White gave defendant his note for the $1,900, and took charge of the business, drew out money from time to time for his own support, and carried on the business for over three years as he would had he owned it, paid defendant the rent, bought flour, fruit, sugar, and other goods, and gave notes and drafts in the name

"New York Pie Company," but no further or other contract or writing was made between him and defendant. Meantime he married defendant's daughter. He and defendant both evidently anticipated that out of the profits of the business defendant would be repaid his $1,900 and interest, and that the business should then belong to Eugene J. White. But the business proved to be unprofitable, and the question arose, who it was that in fact owned and run the business while its unpaid debts were being contracted. Was Eugene J. White the owner of the business, or was he merely agent for defendant?

Other actions involving this question have been to this court. *Hodge* v. *Ludlum*, 45 Minn. 290; *Stevens* v. *Ludlum*, 46 Minn. 160; and *Irish-American Bank* v. *Ludlum*, *post*, 344. Reference is here made to the facts stated in those reports.

Soon after buying the pie business the defendant organized and carried on the "Minneapolis Baking Company," and its business was spoken of as the bread business. This bread business for over two years was conducted in the same building with the business of the Pie Company, and the two companies occupied a common office between them, and White acted as the manager of both. At various times the defendant had conversations with A. P. Thompson, the payee in the notes in suit, in which he informed Thompson that he, the defendant, was the proprietor of the Pie Company. At various times in 1888 and 1889, the representatives of the mercantile agency of R. G. Dun & Co. called upon defendant, and requested statements from him with reference to his financial standing, and that of the two companies, and of his connection therewith. He informed them that he was the owner of the New York Pie Company and the Minneapolis Baking Company, and gave them a list of his properties, for the purpose of establishing the credit of the two concerns.

During that time, and at the time of the making of the promissory notes in suit, Thompson and plaintiff were each subscribers of R. G. Dun & Co. In January, 1889, the defendant, through his agent, White, brought suit against a firm named Dunn & Wallace, and in person verified the complaint, in which he swore that he was doing business under the name and style of "New York Pie Company," and

Thompson knew of the suit and verification. In November, 1889, White borrowed money for the Pie Company from Thompson, and gave the notes in suit therefor. Thompson had previously applied to R. G. Dun & Co. for a mercantile report on the New York Pie Company, and had obtained the information which the defendant had given to the mercantile agency. Plaintiff was also a subscriber of R. G. Dun & Co., and discounted these notes for Thompson with his indorsement thereon.

On December 21, 1889, while defendant and White were negotiating another loan of the plaintiff, the defendant stated to plaintiff, speaking of these notes which plaintiff then held against the Pie Company, that he was the New York Pie Company and the Minneapolis Baking Company, and that the notes were good. White and Thompson both became insolvent and White was discharged from the service of the Pie Company.

White kept no books of any kind showing the expenses or receipts of the business, except the book showing the deposits in and checks on Security Bank. John Ludlum never put any money in the business except by way of loaning money to White, and always took White's note for it. E. J. White never accounted to John Ludlum for the business, never made any statements to him of its condition, and was never required to do either. White paid on this note of $1,900 which he gave Ludlum, $82, July 30, 1887; $76 later for interest, and $500 at another time. He paid rent on the building at different times until July, 1889. Ludlum did not stay around the place of business of the New York Pie Company, never bought material for it, or received the receipts, and never hired any of the help or paid any of it. The other facts appear in the opinion of the court.

The action was tried June 7, 1890. The jury returned a verdict for plaintiff for the amount of the notes. Defendant moved the court for a new trial, and being denied, appealed.

The questions discussed in this court related to the admission or exclusion of evidence on the trial, the credibility of witnesses, and whether the evidence was sufficient to support the verdict.

*Gilger & Harrison,* for appellant.

*Rea & Hubachek,* for respondent.

Collins, J.   Action upon two promissory notes, one dated December 2d, the other December 18, 1889, each maturing ninety days from its date, signed "New York Pie Co., by E. J. White, Manager," made payable to the order of A. P. Thompson, and indorsed by him. The action grows out of transactions much like those considered in *Hodge* v. *Ludlum*, 45 Minn. 290, (47 N. W. Rep. 805,) and *Stevens* v. *Ludlum*, 46 Minn. 160, (48 N. W. Rep. 771.)   In the complaint it was averred that defendant was engaged in business as the New York Pie Company when these notes were executed and delivered; that they were so executed and delivered in defendant's behalf by his duly-authorized agent and manager, White; and that Thompson, the payee, had duly sold, indorsed, and transferred the same to plaintiff, a banking corporation, before maturity, and for value.   These allegations were put in issue by defendant's answer, and he therein averred, among other things, that White himself was the pie company, that he made and delivered these notes to Thompson in pursuance of a conspiracy which had been entered into between them to cheat and defraud defendant, and that plaintiff was not a *bona fide* purchaser of the notes, but held and was enforcing the collection thereof for the use and benefit of White and Thompson.   It may be well to say right here that, while there was testimony tending to show that the persons named were in collusion to wrong the defendant in the execution and discounting of these and other notes, there was no testimony whatsoever discrediting the claim and statement of plaintiff's witness and cashier that for it, in the regular course of business, before maturity and for value, he had purchased and discounted three notes, on one of which the pie company was an indorser, and of two the maker, payable to Thompson's order, and indorsed by him; and that the notes in suit were executed and delivered to the bank when the notes first mentioned matured in lieu or renewal thereof, all of said paper being discounted, purchased, and taken in the belief that defendant, Ludlum, was the pie company.

This case seems to have been tried upon the belief that the evidence produced would clearly establish that defendant was in reality the pie company when all of the notes were made or indorsed; that White was the manager of that business or concern, and that

as such manager he was authorized and empowered to execute or indorse the notes in the course of its business transactions. While, on the trial, some reference was made to testimony, which it was claimed tended to show that defendant had by his conduct, and as to the notes sued upon, estopped himself from denying that he was the pie company, we shall make no special mention of this feature of the case, because we are unable to see that by this testimony the essential elements of an estoppel were shown to have existed.

That White was the manager of the business carried on by the pie company, and that he was authorized to execute and discount its negotiable paper, was clearly shown upon the trial; and, as there was no real dispute over plaintiff's rights as a *bona fide* purchaser of negotiable promissory notes, the storm center, so to speak, on the trial of the case gathered about plaintiff's claim that defendant, Ludlum, was the pie company in fact, and therefore the real maker of the notes in question. All other issues or questions became subsidiary to this.

The plaintiff undertook to establish its contention by the direct testimony of White, by evidence of statements or admissions alleged to have been made by defendant both before and after the execution and indorsement of the notes, and by spreading before the jury a number of facts and circumstances, all of which it was claimed went to establish plaintiff's position. This proof was met by denials and explanations, a wide range of examination being allowed; but a verdict for plaintiff resulted. The refusal of the court below to grant defendant's motion for a new trial is assailed with twenty-five assignments of error, many of them repetitions in effect, and, unfortunately for this court, not grouped or put together in the argument, so as to be easily comprehended or disposed of. The most of these assignments are directed to the rulings made by the trial court on the admission of testimony, which, it was claimed, had a tendency to show that Ludlum transacted business pertaining to the affairs of the pie company,—such as paying its bills, and directing White in the conduct of its affairs; or to establish the principal fact that he was the company,—such as his statements and admissions to various parties to that effect. We do not regard

it as necessary, nor do we propose, to consider these assignments of error in detail.

There was testimony offered and received under defendant's objection as to the payment, in December, 1889, of certain bills of the pie company by him, and also as to what was said and done by White and himself when the bills of exchange involved in the *Stevens' Case, supra,* were presented and accepted as therein related. The class of testimony was admissible as evidence of the acts of defendant in connection with the business affairs of the company, tending to show that the business was his own, and that in fact he was the person who was conducting it under the name of the New York . Pie Company. It was evident that the name was assumed for business purposes; and the real proprietor or proprietors could be ascertained by direct proof or by indirect, such as acts and circumstances of more or less pertinency and weight. Such proof might be met—as part of this was—by an unqualified denial; or defendant's conduct on these occasions might have been accounted for and explained. But evidence that he paid quite a number of bills against the company, and also directed White to accept the Stevens drafts when they were presented, was of some potency in a determination of the principal question here.

The testimony of Thompson relative to the check for $75 was of this same class.

On December 21, 1889, White and defendant, Ludlum, went to plaintiff bank to borrow money, in which they succeeded, giving their individual note, to use in paying the bills before mentioned. While there in conversation with Cashier Gould, the latter stated to Ludlum that the bank had taken quite a number of the notes of the pie company, to which remark defendant, it was said, replied that he was the company, and that the notes were good. Defendant objected to proof of this conversation, principally because it occurred after plaintiff had accepted the notes in dispute.

This testimony had no tendency to establish an estoppel *in pais,* for the reason suggested by the objection. The conversation occurred too late to influence the action or conduct of the bank with reference to the purchase of the original notes some months prior,

or the acceptance of the renewal notes—those in litigation—a few days before. But the testimony was relevant as an admission by defendant that he was the pie company then; and if he was that company at any time it seems quite clear that he became so in 1886, when he took a bill of sale of its personal property from E. P. White, a brother of the manager, and then the proprietor.

It was proper for plaintiff to show the history of the notes of which these were renewals, and that was the sole purpose of Thompson's testimony, of which appellant complains in his fourth assignment of error.

Thompson was a subscriber at Dun's Commercial Agency, and called for a report upon the pie company, which was furnished in August, 1889, being that in substance set forth in the reporter's statement of the facts in the *Stevens' Case, supra.* After testifying that he had lost the written report so furnished, Thompson was permitted to state its contents, under defendant's objection that it was "incompetent and immaterial, on the ground that the report itself would not be admissible upon the facts shown in respect to its execution." The counsel for appellant fail on this appeal to argue the objection made below, and we are at a loss to understand what facts had been shown in respect to the execution of the report forwarded Thompson which would have shut it out. The objection made was insufficient to exclude the proposed testimony on the ground that it had already been made to appear on the trial that an original report, of which a copy might have and must have been furnished Thompson, was on file at the commercial agency, or upon the ground that the loss of the report testified to by the witness had not been clearly established, or upon the ground that in no event had the report any materiality in the action on trial. The attention of the court was not called to any of these matters as valid objections to the reception of the testimony, and hence we cannot consider them.

The plaintiff's cashier was allowed to testify that he took the paper of the pie company under the supposition and belief that defendant was such company. This testimony had a bearing upon the good faith of the plaintiff when discounting the original notes, and again when accepting the renewal notes. Counsel for appellant are in

error when stating in their brief that by this ruling the court below permitted the cashier to express his opinion that defendant was the company.

There is nothing to appellant's claim that he was deprived of a proper cross-examination of the cashier, Gould, and the witness White. Full and complete answers to his questions would have had no tendency to prove or disprove any of the real issues of the case. In addition to this, the ground had been fully covered by the testimony already in; and a part of this was repeated later on, without objection.

It is contended that the court erred in permitting Exhibit K to be read to the jury. This was an agreement in writing, dated in February, 1889, made by one Rowland and John T. Ludlum, a son of defendant, who were then copartners, on the same premises with the pie company, under the firm name of the Minneapolis Baking Company, in reference to the joint use of said premises by the two concerns. In that paper it was set forth that young Ludlum was the pie company, and he certainly assumed to act for it. As he had testified on the trial that White was the company, and no one else, from the years 1886 to 1889, inclusive, Exhibit K was admissible for the purpose of contradicting him on this point, if for no other purpose.

Counsel for appellant took several exceptions to the charge to the jury as given, and excepted to the refusal of the court to give several of their requests as drawn.

For the reasons heretofore stated all reference to the law of estoppel should have been omitted in the charge. But not only did appellant's counsel fail to demand that the jury be instructed that the testimony was insufficient to show that defendant had, as to the causes of action, estopped himself from denying that he was the pie company, but they added instructions to those already submitted by the counsel for plaintiff upon the same branch of the law. The law pertaining to the doctrine of estoppel was succinctly stated by the court, however, and probably no harm was done; for it would have been impossible for an intelligent jury, with the testimony and the charge, to have based a verdict against defendant upon the doc-

trine of estoppel.    The charge otherwise was  clear, full, and appli-
cable, covering all of the issuable questions.    None of the exceptions
to it were well taken.

It is asserted that the verdict cannot be sustained upon the evi-
dence, and we are asked to reverse the order on that ground.    It is
enough to say that there was evidence in support of the conclusion of
the jury.

Order affirmed.

Application for reargument was denied April 25, 1892.

(Opinion published 51 N. W. Rep. 1047.)