## THOMAS v. FITTS–SMITH DRY GOODS CO.

No. 5302.

Court of Civil Appeals of Texas. Amarillo.
May 12, 1941.

244

Clayton & Bralley, of Amarillo, for appellant.

P. R. Underwood and Arthur Glover, both of Amarillo, for appellee.

JACKSON, Chief Justice.

This suit was instituted by Fitts-Smith Dry Goods Company, the appellee, in the County Court of Potter County, Texas against J. L. or J. Lawton Thomas, the appellant, to recover $414.90 upon an itemized verified account for goods, wares and merchandise alleged by appellee to have been sold and delivered to appellant doing business under the trade name of the Consumers Oil Company at Goldston, Texas.

The appellant, J. L. Thomas, by a verified answer denied that he was the owner of or interested in or operated any retail business in the town of Goldston under the trade name of Consumers Oil Company; denied that he purchased or received the merchandise or any of it or that it was sold to or delivered to him or that he ever promised to pay therefor.

In a supplemental petition the appellees in reply to appellant's answer pleaded that on or about February 19, 1937, the appellant made a financial statement to Dun & Bradstreet to assist him in obtaining credit; that he intended that such information should be disseminated and furnished by Dun & Bradstreet to its subscribers who would rely thereon regarding appellant's financial responsibility; that appellee in the course of its business obtained a report from Dun & Bradstreet based on the writ-

ten statement of J. L. Thomas who held himself to be the sole owner of the Consumers Oil Company at Goldston, Texas; that appellee relied on the report and the appellant is estopped by the statement and other facts and circumstances relative thereto to deny ownership of the business known and conducted at Goldston, Texas, as the Consumers Oil Company.

It was agreed between the parties that there were delivered to the Consumers Oil Company at Goldston the goods, wares and merchandise described in appellee's itemized, verified account and the value of such merchandise amounted to $414.90. It was also agreed that the financial statement furnished to Dun & Bradstreet, Inc., was signed by J. L. Thomas on or about the 19th day of February, 1935, and mailed by him to Dun & Bradstreet at Amarillo, Texas, on February 21st thereafter.

In response to the one special issue submitted by the court the jury found that the appellant, J. L. Thomas, held himself out to Dun & Bradstreet to be the sole owner of the Consumers Oil Company at Goldston, Texas.

On this finding the court rendered judgment in favor of appellee for principal and interest in the sum of $516.55 with 6% interest per annum thereon thereafter, from which judgment this appeal is prosecuted.

The appellant by his first assignment of error challenges the action of the trial court in admitting over his objection the report of Dun & Bradstreet, Inc., which recited that appellant operated "branches under the style of Consumers Oil Company at Groom and near Clarendon, Texas" because such statement was a mere conclusion of the employees of Dun & Bradstreet who compiled the report and was not based upon the financial statement given by appellant to Dun & Bradstreet, was contrary thereto and was hearsay and not admissible.

The controlling fact issue is whether or not the record discloses that appellant held himself out as the owner of the business conducted at Goldston, Texas, under the trade name of the Consumers Oil Company and thereby estopped himself from denying the ownership thereof and liability for the merchandise purchased from appellee by the Consumers Oil Company at Goldston.

The appellant on February 19, 1935, made, executed and mailed to Dun & Bradstreet, Inc., a financial statement which it

promptly received and the part thereof material to a consideration of this appeal reads as follows:

jection of the appellant who earnestly insists that it was error for the court to admit this statement: "Branches under style

"Statement Made to Dun & Bradstreet, Inc., The Mercantile Agency
"For the use of Subscribers as a Basis for Credit and Insurance

"Name of Concern....J. L. Thomas.    Trade Style Used......
"Street Address....501 Grant.    Town....Amarillo.    State....Texas.
"Business....Oil, Gasoline, Tires.    Location of Branches....
"Olton, Plainview, Amarillo, Groom, Goldston and Alanreed.
"Give Full Name of Each Officer, Director, Partner or Proprietor.    If Partners, state if General, Special or Limited.    (See Over—Remarks)

| "Full Names and Titles | Age | Married? | Native of | U. S. Citizen? |
|---|---|---|---|---|
| "1.  J. L. Thomas | 32 | Yes | Okla. | Yes |

"(I have a partner at the Olton place, and also at the Amarillo place, but I have made allowance for that and only took 1/2 profits and debts.)
    *   *   *           *   *   *           *   *   *

"Date of Signing—2/19/35

"Signed { Name of Concern......Consumers Oil Co., Groom.
Authorized United Oil Service
"Per     Individual......J. L. Thomas."

On February 27, 1935, Dun & Bradstreet at the request of the appellee, who was a subscriber, made to the Fitts-Smith Dry Goods Company a report which contained a verbatim copy of appellant's written statement of his assets and liabilities. In addition to the exact matter copied from the written language of appellant's statement the report contained, among other things, an analysis or the conclusion of the agent or agents of Dun & Bradstreet under the head of "Method of Operation" which reads as follows:

"Method of Operation

"His principal business is that which is conducted as 'United Oil Service' and in this connection he is engaged as a distributor and wholesaler of lubricating oils and greases and sells locally and throughout 44 counties in the Panhandle of Texas. Handles the products of the Pure Oil Co. Terms are cash mainly, however, some credit is extended to large concerns. Office and storage space is maintained in a large brick warehouse building and he has three oil storage tanks of 2200 gallon capacity each. Branches under style of Consumers Oil Co., are conducted at Groom and near Clarendon, Texas. A branch is located at Alanreed and he also conducts a branch at Plainview, the latter under the style of 'Farmers Oil Co.'"

The language above quoted was admitted in evidence by the court over the ob-

of Consumers Oil Co., are conducted at Groom and near Clarendon, Texas. A branch is located at Alanreed and he also conducts a branch at Plainview, the latter under the style of 'Farmers Oil Co.'"

It will be noted that the appellant in the statement made to Dun & Bradstreet signed name of concern, Consumers Oil Company, Groom, Authorized United Oil Service, per Individual, J. L. Thomas. In his signed statement he said in effect that he had a business at 500 Grant Street in Amarillo, Texas, and that he had branches located at Olton, Plainview, Amarillo, Groom, Goldston and Alanreed. The testimony shows without dispute that Goldston is near Clarendon and that it is the place referred to as "near Clarendon". Mr. Thomas testified that he held a lease on a building in Goldston which with the exception of a pump was equipped for the sale of oil and gas; that he installed a pump which he owned and on August 4, 1934, he leased the building and equipment to B. Hendrix who operated the business under the trade name of Consumers Oil Company in the building for a year.

When the report was made on February 19, 1935, this business was in operation in the building leased by Mr. Thomas and the business therein was conducted as the Consumers Oil Company by B. Hendrix. In his written statement he reported that he had a branch business at Goldston. There was no other business operated there

in that name. He further says his business at Olton was operated·under the trade name of Consumers Oil· Company; that his business at Groom was conducted· under the trade name of Consumers Oil Company and the business at Alanreed was known as the Consumers Oil Company; that the branch at Plainview was operated under the name of the Farmers Oil Company and that the only station operated as United Oil Service was his wholesale station at Amarillo. In addition to the written statement of appellant Walter M. Craig, the agent for Dun & Bradstreet, testified that the information contained in the report furnished to the appellees was compiled both from conversations he had with appellant and from the written report which he received through the mail. Under this record did the court commit reversible error in permitting the introduction of the language in the report furnished to appellee which is that branches under the style of Consumers Oil Company are conducted at Groom and near Clarendon, Texas by the appellant?

In 23 Am.Jur. 956, para. 151, the author says: "It is generally held that any person who extends credit to one on the basis of information furnished to a commercial agency by the seeker of credit has the right to rely on the information so furnished, just as if the representations were made directly to the person dealing with the representor on the basis of such information. One who furnishes information to a commercial agency as to his financial condition is held to know that it is for publication to the business world, and that such publication will probably be consulted when he applies to any business institution for credit. It is considered that he can have no motive other than to enable the agency to communicate such information to persons who may be interested in obtaining it for their guidance."

This announcement of the law is also found in Gainesville National Bank et al. v. Bamberger, Bloom & Co., 77 Tex. 48, 13 S.W. 959, 19 Am.St.Rep. 738.

In Durham et al. v. Wichita Mill & Elevator Co., Tex.Civ.App., 202 S.W. 138, 140, writ denied, it is held:

"It was not essential to show that plaintiff relied exclusively on the information furnished by the Martin Company in order to hold the defendants liable. If the report made by the Martin Company was false and misleading, and the plaintiff relied thereon, even in part, and would not have extended the credit it did except for such reliance, defendants would be liable.

\* \* \* \* \* \*

"If the evidence upon this point makes it a question for the jury whether the identical statements rendered to the commercial agencies, or exact copies thereof, were forwarded by said commercial agencies to the plaintiff, yet if the material contents thereof were furnished by such agencies to plaintiff, and these portions contained material and false representations as to the Martin Company's solvency, and plaintiff relied thereon in extending further credit, defendants would be liable."

The law seems to be settled that a party who makes representations to a commercial agency relative to his business may be estopped from denying such representations to parties to whom such communications are made. Stevens v. Ludlum, 46 Minn. 160, 48 N.W. 771, 13 L.R.A. 270, 24 Am.St.Rep. 210; Irish-American Bank v. Ludlum, 49 Minn. 255, 51 N.W. 1047.

Under the record and these authorities we are of the opinion that the court did not commit reversible error in admitting in evidence the language complained of.

We are also of the opinion that if error it was harmless for the reason that we believe the written statements of appellant would authorize the finding of the jury that he held himself out to Dun & Bradstreet as doing business at Goldston, Texas, under the trade name of Consumers Oil Company. It is not a question of whether or not he was actually engaged in business under such trade name at Goldston, but the issue is did he so hold himself out. This assignment is overruled.

The appellant urges as error the action of the court in failing to submit to the jury all the elements required to constitute estoppel and prohibit appellant from denying that he represented to Dun & Bradstreet that he was doing business at Goldston under the trade name of Consumers Oil Company. This contention is apparently settled adversely to appellant by the Supreme Court in Wichita Falls & Oklahoma Ry. Co. et al. v. Pepper, 134 Tex. 360, 135 S.W.2d 79; Texas Employers Insurance Ass'n v. J. W. Reed, Tex.Civ.App., 150 S. W.2d 858.

Finding no reversible error, the judgment is affirmed.