## In re ROALSWICK et al.

### JOHN B. STETSON CO. v. WOODIN.

#### (District Court, D. Montana. August 22, 1901.)

BANKRUPTCY—RECOVERY OF GOODS SOLD TO BANKRUPT—EVIDENCE OF FRAUD.

To authorize the rescission of an executed sale of goods to one who subsequently became a bankrupt, on the ground that he obtained the same by false and fraudulent representations, it must be shown that he made such representations knowing them to be false, or without reasonable grounds for believing them to be true, and they must have induced the seller to consummate the sale when he otherwise would not have done so. A report furnished by a commercial agency to the seller, based in part on statements made by the buyer several months before his bankruptcy, at a time when he did not know himself to be insolvent, and which do not appear to have been willfully false, and in part upon the independent estimate of others as to his financial condition, is not a sufficient evidence of fraud to warrant such rescission.

In Bankruptcy. On petition of the John B. Stetson Company.

Ranson Cooper, for trustee in bankruptcy.

Geo. H. Stanton and H. H. Emery, for petitioning creditors.

KNOWLES, District Judge. From the agreed statement of facts on file in this matter it appears that for a number of years prior to March 6, 1901, Lewis and Andrew Roalswick were partners doing business as merchants at Great Falls, Mont., under the firm name of Roalswick Bros. Upon their voluntary petition, filed in this court March 6, 1901, they were duly adjudged bankrupts, and thereafter Frank A. Woodin was duly appointed as trustee of their property and estate. He duly qualified as such trustee, entered upon the discharge of his duties, and took possession of all the property and estate of the bankrupts, including the merchandise in controversy herein, and claimed by the petitioner, which merchandise is stored in a warehouse in Great Falls, Mont., mingled with other goods belonging to the estate, but capable of segregation and identification by reason of being still in the original packages unbroken. The petitioner has made a demand upon the trustee for the possession of these goods upon the ground that there was no sale, on account of the fraud of the buyers in fraudulently and falsely misrepresenting their commercial standing, financial condition, etc., and that they knew themselves to be insolvent at the time, and bought the goods in contemplation of filing their petition in bankruptcy. The trustee refused to comply with this demand, and thereupon a petition was filed in this court practically setting forth the same grounds, and praying that the trustee be required to deliver these goods to the petitioner. The trustee answered, and denied all of the averments of fraud and misrepresentation alleged in the petition. Briefly stated, the facts are as follows: On September 1, 1900, Roalswick Bros. placed with the petitioner an order for certain goods, amounting in the aggregate to $237. The goods were to be shipped from Philadelphia, Pa., for delivery to the firm at Great Falls, Mont., on or about February 1, 1901. The order was accepted, goods were shipped, and delivered to the firm at Great Falls on the 23d day of February, 1901,

and stored in a warehouse, as hereinbefore stated. Prior to the shipment of the goods, the petitioner obtained a report of the commercial standing, financial condition, etc., of the firm from the R. G. Dun Mercantile Agency, the report being furnished through its correspondent at said Great Falls. This report is relied upon to sustain the contention of the petitioner as to the false and fraudulent representations of the firm at the time of the inception of the contract of sale, and no other, and is as follows:

"Roalswick Bros. D. G. Clo. B. S. &c. Great Falls, Mont.

"Nov. 17, 1900.        Trav. Report.        No. 221–223 First Ave. South.

"Lewis Roalswick interviewed, and he states that the firm has taken no inventory this year, for which reason he is unable to make a statement; but he estimates the firm's liabilities for merchandise at $8,000 outside of what they are owing for winter goods now in transit or under order, the amount of which he says he is unable to give. Also says the firm is owing to the bank $890, and that they have a stock on hand of probably $30,000. He further states that the firm has arranged to consolidate its business with that of Archie Burrell in the grocery line, and they will operate as a corporation under the name of Fair Commercial Co. These two firms, however, will not unite until a new store building on Central avenue, which is in course of construction, and which they will occupy when completed, is finished. This building is not expected to be ready for them until after the beginning of the next year. Roalswick Bros. are reported to be doing a fair trade, and the men give it their close attention, but in some quarters it is thought they are inclined to overwork their capital. Their stock is not thought worth in excess of $20,000, and the best estimates received for their responsibility in the neighborhood of $7,000. Their bank debt is said correct. So far as can be ascertained locally, they are satisfactory in their payments, and appear to have no difficulty in getting what credit they require. Trade reports received in May and June last, however, from N. Y. City, St. Paul, and Minneapolis showed them to be slow in some instances, though, as a rule, prompt and satisfactory. The Fair Commercial Company has recently been incorporated with a capital stock of $50,000, but as yet nothing has been paid in, and, as stated above, will not begin business until its store building is completed, which will be some weeks yet. In the meantime Roalswick Bros. are considered a fair risk for reasonable amounts.

"A. E.    11/27/1900.                                    N. C."

This report speaks for itself. It is just such a report as could be expected of an agency of this kind, made upon inquiry locally as well as elsewhere, and drawn from the sources usually open to and possessed by such an agency. It is the close, guarded, and conservative estimate and opinion given by a mercantile agency upon the commercial standing, financial condition, etc., of the parties reported upon in the community where they carry on their enterprise and commercial ventures. There is absolutely nothing in the statements therein contained, even if they had been made by a member of the firm on their behalf, that would indicate any fraud, misrepresentation, concealment, or deceit as to their commercial standing, financial condition, etc., made at the time for the purpose of obtaining credit. From it the firm appears to be solvent, and there is nothing to indicate that the firm either knew or had reasonable grounds to believe that they were insolvent, and it is agreed that they did not know they were insolvent at that time. The granting of the prayer of the petition would be, in effect, a rescission of an executed contract of sale. To justify a court in thus rescinding an executed contract of

sale, there must be something more than the simple failure of the buyer to pay the seller for the price of his goods. There must be such representations or statements to the seller by the buyer, in relation to his commercial standing, financial condition, etc., from which it may reasonably be inferred that, if the seller had known or been informed of the true state and condition of the buyer's affairs, he would not have consummated the sale by a delivery of the goods. The representations must be willfully false, or must have been such as the buyer did not believe to be true, or had no reasonable grounds to believe to be true, and by means whereof the seller was deceived, and thereby induced to consummate a sale he otherwise would not have made. If, on the other hand, the buyer honestly, and upon reasonable grounds, believed his representations to be true, the seller will not be entitled to a rescission of the executed contract of sale. There is nothing in this report that would indicate any intent to defraud or deceive the seller. It must be inferred that the buyers acted in good faith, and from honest motives, and that they in good faith believed themselves perfectly solvent at the time of the inception of this contract of sale; and this is agreed to. The seller must be held to have relied upon the report furnished by the aforesaid mercantile agency, and not upon any representations made by the buyer.

It is claimed that the firm ordered these goods with the knowledge of their insolvency, and in contemplation of filing their petition in bankruptcy. There is nothing in that claim. It is merely an assertion unsupported by any evidence whatever. The buyers continued in business at the same place and in the same way for a period of more than six months after the order for goods was accepted, and there does not appear to have been the least thought or suspicion that they were insolvent, or contemplated bankruptcy.

For the reasons herein stated, the petition is denied.