CRIM et al. v. WOODFORD.

(Circuit Court of Appeals, Fourth Circuit. February 21, 1905.)

No. 522.

1. BANKRUPTCY—APPEAL—JOINDER OF APPELLANTS HAVING SEPARATE INTERESTS.

Where but a single order or judgment is made by a district court in a bankruptcy proceeding which determines a question affecting alike different claimants, they may unite in an appeal therefrom, although their interests are several and distinct.

[Ed. Note.—Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. SAME—PETITION FOR REVIEW OF REFEREE'S ORDER—TIME FOR FILING.

There is no provision of the bankruptcy act or of the general orders in bankruptcy fixing the time within which a petition for review of an order

of a referee must be filed, and, in the absence of a rule of court on the subject, the time within which such a petition may be entertained is discretionary, subject only to the limitation that it must be filed within a reasonable time in view of the general purpose of the act to expedite the proceedings.

3. SAME—REVIEW OF REFEREE'S ORDER—FAILURE TO SUMMARIZE EVIDENCE.

The provision of general orders in bankruptcy No. 27 (89 Fed. xi, 18 Sup. Ct. viii), requiring a referee on the filing of a petition for review of an order made by him to certify a summary of the evidence relating thereto to the judge, should be observed; but where it appears from the referee's certificate that, instead of making a summary, he has returned all the evidence taken, and the matter has been determined by the judge without any motion having been made to require the evidence to be summarized, the proceeding for review will not be invalidated, where it involves substantial matters, because the rule was not observed by the referee.

4. SAME—LIENS—VALIDITY.

Liens given by an insolvent within four months prior to his bankruptcy to secure loans made him at the time, which were valid under the laws of the state, and were accepted by the lenders in good faith and without knowledge of the borrower's insolvency, or good cause to believe him insolvent, are protected by Bankr. Act July 1, 1898, c. 541, § 67d, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], and the fact alone that a lender knew that the borrower had overdrawn his bank account did not charge him with knowledge of insolvency where the borrower was a man of excellent reputation, and engaged in large contracts, supposed to be profitable, and requiring the use of considerable sums of money.

Appeal from the District Court of the United States for the Northern District of West Virginia, at Clarksburg, in Bankruptcy.

Melville Peck and John Bassell (Fred. O. Blue and W. T. Ice, on the briefs), for appellants.

J. Hop. Woods and W. T. George, for appellee.

Before GOFF and PRITCHARD, Circuit Judges, and BRAWLEY, District Judge.

BRAWLEY, District Judge. This is an appeal from the District Court of the United States for the Northern District of West Virginia, in bankruptcy, and a correct understanding of the questions involved can best be had by printing in full the judgment entered October 8, 1903. It is as follows:

"In the Matter of J. M. Proudfoot, Bankrupt. In Bankruptcy.

"An application having been made heretofore to this court by J. N. B. Crim, S. A. Moore, J. F. Manown, J. M. Carlin, and others to review the decree made by W. Frank Stout, referee herein, on the 5th day of June, 1902, wherein said referee fixed the liens and priorities upon the estate of said J. M. Proudfoot, bankrupt, the same came on this day to be heard upon the papers and certificates of said referee, certifying the said questions presented for review, and the court heard the argument of counsel. Upon consideration whereof, it appearing to the court that no summary of the evidence taken in said matter, as provided for by rule 27 of the Supreme Court of the United States [89 Fed. xi, 18 Sup. Ct. viii], governing proceedings in matters of bankruptcy, was made by said referee, and nothing appearing in the said record as presented to show that there was any error in the said findings of said referee, it is therefore adjudged, ordered, and decreed that the findings of the said referee made on the said 5th day of June, 1902, be, and the same are hereby, con-

firmed, and the said referee is directed to proceed to disburse the funds belonging to the said bankrupt's estate in accordance with said findings and the laws governing bankrupt proceedings."

There is a motion to dismiss the appeal because the interest of the petitioners Crim, Moore, and Manown are not joint, but are several and distinct, and therefore it is claimed they cannot collectively join in the appeal. It is true that each of the appellants named has a separate interest, but, as the court below entered but one judgment and allowed the joint appeal, there appears to be no good reason why they should not all be heard together, as the main question determined by the court below and for consideration here is common to all the appellants, and separate appeals would have served no good purpose, and involved additional and unnecessary expense. The motion to dismiss the appeal on that ground therefore is refused.

The second ground is, "because the petitioners Moore and Manown did not file a petition before the referee for a review within the time prescribed by law." The order of the referee adjudging and decreeing that the liens claimed by the appellants should be set aside was entered June 5, 1902. Crim's petition for review was filed June 9, 1902, Moore's petition June 24, 1902, and Manown's July 1, 1902. It does not appear from the record that any objection was made in the court below to the hearing of the petitions on the ground that they were not filed in due time, but it is now claimed that, inasmuch as Moore and Manown did not file their petitions within 10 days, they had no right to be heard. There is nothing in the bankrupt act nor in the general orders which fixes a time within which petitions for review of the referee's decisions must be filed. Section 25 (Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432]) requires that in the cases therein enumerated appeals to the Circuit Courts of Appeal shall be taken within 10 days after the judgment appealed from has been rendered. There is no apparent reason why a longer time than this should be allowed for the filing of a petition for a review of the order of a referee, for in nearly all of the provisions of the bankruptcy act which require notices the time limit of 10 days is adopted, and in some jurisdictions there is a rule to that effect; but it does not appear that there is any such rule in the district from which this appeal comes. There being no time limit fixed by the statute or by rule, it seems to be left to the discretion of the judge, and the practice, so far as adjudicated cases which we have examined enlighten us on this point, is that the petition may be filed within a reasonable time. The Circuit Court of Appeals of the First Circuit in Re Worcester County, 4 Am. Bankr. Rep. 501, 102 Fed. 808, 42 C. C. A. 637, held as follows:

"The original decree was entered, as we have already said, on July 21, 1899, and petition to review was filed in this court on December 7, 1899; that is, within six months. The statute fixes no time within which a petition of this nature must be filed, so that unless some time is fixed by a rule, as was the case in Re Hien, 166 U. S. 432, 17 Sup. Ct. 624, 41 L. Ed. 1066, or by following some analogous provision of statute, petitions of this character can be filed with reference to any proceeding in bankruptcy so long as the decree is executory or the case has not been closed. The bankruptcy act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517) in like manner omitted any limitation on the exercise of the revisory power of the Circuit Court, so that in this circuit

a rule was entered September 15, 1870, requiring that the petition should be filed within fifteen days after the ruling, order, or decree appealed from. Inasmuch as there is no statutory limitation fixing the time for filing bills for review of matters arising on the face of the record, Central Trust Company v. Grant Locomotive Works, 135 U. S. 207, 10 Sup. Ct. 736, 34 L. Ed. 97, already referred to, determined that the time must be limited to that given by the statute for taking an appeal from the decree sought to be reviewed. After a careful consideration of the question the Circuit Court of Appeals for the Ninth Circuit, in Reed v. Stanley, 97 Fed. 521, 38 C. C. A. 331, held that from the same rule the time within which a bill for review might be filed, since the act establishing the Circuit Court of Appeals was passed, is limited by analogy to the six months allowed by statute for taking of appeals to the last-named court. By parity of reasoning it would seem to follow that the time for filing a petition for revision under section 24 must be limited to six months. Certainly it can be no shorter; and we have already shown that the petition was filed within that period."

In the reporter's note to this case attention is called to the fact that appeals in bankruptcy are limited by section 25 to 10 days. In Re Chambers, Calder & Company, 6 Am. Bankr. Rep. 709, there is an opinion of Littlefield, referee, upon a petition for review filed September 23, 1901, from a decision made May 20, 1900, wherein the referee held that it came too late to entitle the petitioner to the remedy, and that, while no time limit was fixed for the filing of such petition, he considered that, inasmuch as the whole scope and purpose of the bankrupt act was to facilitate and expedite the settling of the estates of bankrupts as rapidly as possible, a petition for review should be promptly filed by the party who deems himself aggrieved by an order of the referee; and says:

"Whether it should be held that ten days or six months is the proper limit for filing such a petition, or that a reasonable time is implied, the right has been lost, for certainly a period of 18 months after the rendering of the decision is not a reasonable time for the filing of such a petition."

As these petitions were filed within 20 and 25 days from the date of the filing of the order of the referee, and the record does not show that any objection was made in the court below for the reason that they were not filed within a reasonable time, in the absence of a statutory provision or rule fixing a time limit, this objection is not sustained.

The third and fourth objections are that there was no proper record before the District Court for review, "because appellants had not complied with general order 27 of the rules prescribed by the United States Supreme Court (89 Fed. xi, 18 Sup. Ct. viii), governing procedure in such matters," and the judgment of the court below, cited above, gives color to these objections. General order No. 27 is as follows:

"When a bankrupt, creditor, trustee or other person shall desire a review by the judge of any order made by the referee he shall file with the referee his petition therefor, setting out the error complained of, and the referee shall forthwith certify to the judge the question presented, a summary of the evidence relating thereto, and the finding and order of the referee thereon."

Section 39 of the bankrupt act of July 1, 1898, c. 541, 30 Stat. 555 [U. S. Comp. St. 1901, p. 3436], which prescribes the duties of referees, provides in subdivision 5 that they shall "make up records embodying the evidence, or the substance thereof, as agreed upon by the parties in all contested matters arising before them, whenever requested to do

so by either of the parties thereto, together with their findings therein, and transmit them to the judges"; and in subdivision 9 it is provided that they shall "upon application of any party in interest preserve the evidence taken, or the substance thereof, as agreed upon by the parties before them, when a stenographer is not in attendance." The general order above cited is intended, manifestly, to carry into effect these provisions, so as to avoid as far as possible the sending of the original proofs to the judge, and to substitute therefor, where the ends of justice would permit, a summary thereof. Cunningham v. German Insurance Bank, 4 Am. Bankr. Rep. 193, 103 Fed. 932, 43 C. C. A. 377. It is important that this rule be enforced, for in the manifold and onerous duties devolved upon the District Judge in the administration of bankrupt estates he ought not to be required to sift out the testimony in order to determine the exact question of fact which could be presented in a summary of the evidence. The Court of Appeals of the First Circuit, in Re Boston Drygoods Company et al., 11 Am. Bankr. Rep. 102, 125 Fed. 226, 60 C. C. A. 118, says:

"It would be detrimental to the authority of the District Court, injurious to its administration of the bankrupt statutes, and involve the numerous and useless delays which those statutes evidently have been framed to avoid, if in the administrative matters, where no substantial interests are concerned, we became meddlesome beyond what the law requires of us."

And this court would be loth to hold that there was any error in the court below in refusing to hear a petition for review where rule 27 had not been complied with. But the learned judge below did more than that. After reciting that no summary of the evidence had been made by the referee, the judgment is:

"And nothing appearing in the said record as presented to show that there was any error in the said findings of said referee, it is therefore adjudged, ordered, and decreed that the findings of said referee made on the said 5th day of June, A. D. 1902, be, and the same are hereby, confirmed, and the said referee is directed to proceed to disburse the funds belonging to said estate in accordance with the said findings and the laws governing bankrupt proceedings."

So we have a final decree involving substantial interests, and it does not clearly appear whether such judgment is predicated upon the failure of the referee to send up a summary of the evidence, or whether the court decided adversely to the petitioners because "nothing appeared in the said record as presented to show that there was any error in the said finding of said referee."

The report of the referee in the matter of Crim's claim is as follows:

"I, W. Frank Stout, one of the referees of said court of bankruptcy, do hereby certify that in the course of the proceedings in said cause before me the following question arose pertinent to the said proceedings: whether the judgment confessed by said James M. Proudfoot on the 28th day of October, 1901, for the sum of $1,000 and $3.75 costs, in favor of J. N. B. Crim, is a valid lien against the estate of the said bankrupt, and has priority over other debts. The referee held that judgment was in fraud of the bankrupt act of 1898, and therefore should be set aside, but allowing the said Crim to prove his claim, and be allowed his pro rata share with other creditors, for the reason that the evidence was clear to the referee that the judgment was confessed by the bankrupt while he was totally insolvent, and that the said Crim had knowledge, or ought to have had knowledge, that the said Proudfoot, bank-

rupt, was insolvent when he confessed the judgment to him, that said judgment was within four months prior to the filing of the petition in bankruptcy, and that it would work a preference, and therefore ought to be set aside. The evidence and decree and the proof of claim are herewith filed. And the said question is certified to the honorable judge for his opinion thereon."

The other certificates are similar, and it appears that all of the testimony relating to each of the said claims was certified to the judge. If the judge desired a summary of the evidence, it was clearly within his province to direct the referee to prepare and submit it, and either party might have moved for an order to that effect; but the record does not show that any such motion was made. It may well be, in a question which involved the bona fides of the claims and the pecuniary condition of the bankrupt at the time the alleged liens were executed, that all of the testimony taken was pertinent to the issue, and that no summary thereof that the referee could prepare would have been acceptable to the parties to the controversy. In a case of this nature every question and answer presumably has some bearing upon the point at issue, and a skilled lawyer might find it difficult to prepare a satisfactory summary. However that may be, it seems to us that it would be manifestly unjust to deprive petitioners of the opportunity to be heard upon questions of substantial right because an officer of the court omitted to summarize the evidence in the belief that all of the testimony would the better present the questions at issue than any part of it which he might undertake to summarize.

The printed record before us is certified to by the clerk as being a "true transcript of the record and proceedings of said court in a certain bankruptcy proceeding." etc., "now of record and on file in my office." The referee certifies that he filed the evidence, the testimony is certified by the stenographer, and the learned judge below in a statement preliminary to the judgment says, "The same came on this day to be heard upon the papers and certificates of said referee," so we cannot doubt that the case as now presented in this record was in the court below. If the judge failed to read the testimony because of noncompliance with rule 27, we cannot be absolved from that duty, for the appeal brings the whole case before us, and finding, as we do, upon the face of the record, plain error of law in the findings of the referee, the judgment must be reversed. The facts of the case upon which the decision of the referee is predicated are practically undisputed. There is no conflict in the testimony, and therefore we are not confronted with the difficulty which arises when the referee and judge concur in findings of fact.

The evidence is that Proudfoot, the bankrupt, was a contractor and builder in the town of Pulaski, in the state of West Virginia; that he was a man of excellent character, and was supposed to be engaged in a lucrative business, having at the time of the transactions hereinafter stated contracts for the building of half a dozen or more houses in the town, and employing a number of laborers. Among other buildings upon which he was engaged was one or more for the petitioner Moore, who was a merchant with whom Proudfoot kept a running account. On August 24, 1901, Proudfoot borrowed from Moore $1,250 in cash, and executed a deed of trust as security therefor by way of mortgage

of his house and lot in the town of Philippi. The money was received in two checks—one for $100, which was used for payment of sundry bills due for freight; and the remainder, less the discount, was deposited by Proudfoot in the bank where he kept his account, and the proof shows that it was so deposited and that it was disbursed in the usual course of business. The testimony is that at the time this money was loaned Moore supposed that Proudfoot was doing a good business, and that this money was sufficient to relieve him from any immediate embarrassment, and, as confirmation of the fact that Moore did not have doubts as to his financial responsibility, he did not put the deed of trust on record. His explanation of such failure to record it is: "I did not record it because I did not see the necessity of recording it. I possibly neglected it, thinking Mr. Proudfoot was perfectly good, and I let the matter run along until I heard that Mr. Manown had recorded a deed of trust for $2,000, and I immediately took my deed of trust to the county clerk for record." It was recorded October 29, 1901, and on November 4 Proudfoot filed his petition in bankruptcy. According to Proudfoot's testimony, the running account between him and Moore at the time of this loan about balanced, and from Moore's testimony it appears that there was some $80 due him on the account. The indebtedness to Crim, according to his testimony, arose in this way: On the evening of October 28, 1901, Proudfoot went to him and said that he wanted to borrow $1,000 to pay a draft of the Penn Door & Sash Company, of Pittsburg, that was in the bank of which Crim was president. Being asked in what condition his business was, Proudfoot told him that he was all right, but if this draft went to protest it would affect him very much, he thought; that there was a good deal of money coming to him on his contracts, and he was very sure he could pay it in a few days. Thereupon they went to the clerk's office, and Proudfoot confessed judgment for $1,000. The next morning he went to the bank, gave the cashier a check for $904.98, the amount of the draft on Proudfoot, and gave Proudfoot his check for $95.02, which made up the $1,000. After a little reflection, Proudfoot said, "I was to pay this money back the last of the week, but I will just give you this check back; I can get along very well without it;" and the same evening he gave him $125, which he said he had just collected. This reduced the amount due on the judgment to about $802. The testimony further is that Proudfoot is indebted to Crim to the amount of $1,600 for money theretofore loaned, and for which there is no security. Crim further testifies that at that time he had no knowledge or suspicion of Proudfoot's insolvency; that he "always had a great deal of confidence in Jacob M. Proudfoot. He was a man of the highest integrity." This witness was not cross-examined, and there is no testimony whatever which raises a doubt as to the good faith of the transaction. Manown was cashier of the bank where Proudfoot did business. On October 17, 1901, he loaned him $2,000, taking his note therefor, secured by the deed of trust which is in evidence. He testified that Proudfoot stood high in the community for his honesty and for the payment of his debts until this time, that he was the largest contractor and builder in the town, and that he had no suspicion of his insolvency. The evidence is

that at the time of this loan Proudfoot had overdrawn his account in bank to the amount of something over $1,000, but it appears that he had frequently overdrawn his account before that time. There is no doubt that at the time of all of these loans Proudfoot was in fact insolvent in the sense that his actual property was insufficient in amount to pay his debts; but it is equally clear from doubt that at the same time he was a man of good standing in the community, that he had at that time contracts for buildings amounting to $15,000 or $20,000, that it was supposed that he was making money out of these contracts, and that the loans were made for the purpose of tiding over what was thought to be temporary embarrassments. It is true that there were circumstances calculated to awaken suspicion in Manown as to Proudfoot's solvency, because his account in the bank was largely overdrawn; but as is said by Mr. Justice Davis in Tiffany v. Boatman's Savings Institution, 18 Wall. 376, 21 L. Ed. 868, a case arising under the bankrupt act of 1867 (Acts March 2, 1867, c. 176, 14 Stat. 517):

"There is nothing in the bankrupt law which interdicts the lending of money to a man in Darby's condition, if the purpose be honest, and the object not fraudulent. And it makes no difference that the lender had good reason to believe the borrower to be insolvent if the loan was made in good faith, without any intention to defeat the provisions of the bankrupt act. It is not difficult to see that in a season of pressure the power to raise ready money may be of immense value to a man in embarrassed circumstances. * * * His estate is not impaired or diminished in consequence, as he gets a present equivalent for the securities he pledges for the payment of the money borrowed. Nor in doing this does he prefer one creditor over another. * * * The preference at which the law is directed can only arise in case of an antecedent debt."

As to the liens of Crim and Moore, there is no ground for a suspicion that they were given to secure antecedent indebtedness. As to Manown's lien, there is a suspicion arising from the fact that Proudfoot at the time of the loan was indebted to the bank of which he was cashier by overdrafts to the amount of about $1,000, and, if the loan had been made by the bank, the lien would have been voidable as a preference to the extent that it secured the antecedent indebtedness and valid as to the remainder, under the principle settled by this court in City National Bank v. Bruce, 109 Fed. 69, 48 C. C. A. 236; but the loan was made by Manown individually, and, according to the testimony, in good faith and without knowledge of insolvency. Overdrafts are in themselves no evidence of insolvency, and in the circumstances they rather tend to show that Proudfoot was in' good credit, for the bank had paid his checks when he had no funds to his account.

Such being the facts, the referee is clearly in error in holding as he did that the trust deeds and confession of judgment "should be set aside because all of these liens were given by the bankrupt when insolvent, and within four months of the time that he filed his petition herein in bankruptcy." Section 67e of the bankrupt act of July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], provides that all conveyances, etc., made or given by a person within four months prior to the filing of his petition in bankruptcy, with the intent and purpose on his part to hinder, delay, or defraud his creditors, shall be null and void except as to purchasers in good faith and for a present fair consideration, and "all conveyances, transfers or incumbrances of his property

made by a debtor at any time within four months prior to the filing of a petition against him and while insolvent which are held null and void as against the creditors of said debtor by the laws of the state, territory or district in which said property is situate, shall be null and void under this act against a creditor of such debtor, if he be adjudged a bankrupt," etc. Under the insolvent laws of West Virginia preferences by insolvent creditors are prohibited, but chapter 74, § 2, of the Code of West Virginia of 1899, provides "that nothing in this section shall be taken to prevent the making of a preference as security for the payment of purchase money or a bona fide loan of money or other bona fide debts contracted at the time such transfer or charge was made"; so it seems clear that there can be no question as to the validity of these liens under the laws of West Virginia, and they are expressly protected under subdivision "d" of section 67 of the bankrupt law, which is: "Liens given or accepted in good faith and not in contemplation of or in fraud upon this act and for a present consideration, which have been recorded according to law, if record thereof was necessary in ·order to impart notice, shall not be affected by this act." All of these liens fall so plainly within the protection of subdivision "d" that it would be useless to cite authorities to sustain them. Moore's deed of trust is, of course, invalid as a lien as against any creditor who in good faith gave credit to the bankrupt between the date of its execution and the date when it was recorded, and who was in ignorance of its existence. The record does not enable us to determine whether there are such creditors, and there must be a reference for that purpose, and for the purpose, also, of determining the relative priorities of the liens of Crim, Moore, and Manown, as that question has not been presented to us; nor has there been any question presented in this record as to whether there are any claims paramount to the liens mentioned.

The judgment of the court below is reversed, and the case is remanded for further proceedings in conformity with this opinion.

Reversed.