In re LEVI & PICARD.

(District Court, S. D. New York. November 10, 1906.)

BANKRUPTCY—SALE OF GOODS TO BANKRUPT—RIGHT OF SELLER TO RESCIND.

To entitle a seller of goods to rescind the sale for fraud, there must have been an undisclosed knowledge of insolvency and an intention not to pay for them on the part of the purchaser when the goods were bought, and the seller cannot rescind and reclaim the goods from the trustee in bankruptcy of the purchaser solely because the latter knew himself to be insolvent and unable to pay when the goods were delivered and received.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 219.]

In Bankruptcy. On petition for reclamation.

Ernst, Lowenstein & Cane, for petitioners.
James, Schell & Elkus, for receiver in bankruptcy.

HOUGH, District Judge. The petition submitted is in the usual form, and would entitle the petitioners to an order of reference if desired. The court, however, is asked to consider certain affidavits and proceedings already on file as an agreed statement of facts, and base its decision thereon. On August 31, 1906, the bankrupt firm bought from the petitioners, on four months' credit, certain pieces

of cloth, which are the subject of this reclamation. Investigation since bankruptcy has shown that the firm was insolvent at the date of purchase, but the partners did not (in my opinion) know that fact. The partnership, however, was not a happy family, and one partner had for a long time been anxious to withdraw from the firm, provided he could take with him in cash his contribution to the firm capital. On August 28, 1906, this partner secretly took from the firm's mail a letter containing a firm remittance of upwards of $11,000, and secreted the money, in order to coerce the other partners into permitting him to retain what he had demanded as the price of his retirement. On September 4th the fact of this appropriation became known. It was immediately evident that, unless this money could be recovered, the firm must fail. The defrauded partners communicated their condition to certain creditors, and as a result a petition in involuntary bankruptcy was filed against the firm on September 6, 1906. Adjudication followed. The investigation first alluded to shows that, even had the $11,000 not been taken, the firm was probably insolvent before August 28th. On September 4th and 5th the goods bought as aforesaid on August 31st were delivered at the bankrupt's place of business, and received by the clerks in charge, who had no knowledge of the firm's troubles.

The right of the petitioners to reclaim the goods so delivered is based upon the proposition that if, at the time of the receipt or delivery thereof, the vendees had reasonable cause to believe that they were unable to pay for them, and did not then intend to pay for them, the sale may be rescinded and the goods recovered, even though no such cause to believe or intent not to pay can be proven or inferred as of the date of the sale. This refinement upon the well-established rule regarding rescission is not in my opinion sustained by authority or reason. Donaldson v. Farwell, 93 U. S. 631, 23 L. Ed. 993, is binding authority in this court. It was there held to be established that what entitles a vendor to disaffirm a contract of sale and recover his goods consists in the vendee's inducing the vendor "to sell him goods on credit" when he was (a) insolvent, (b) concealed his insolvency, and (c) did not intend to pay for what he bought. Here the contract of sale was complete when the minds of the parties met on August 31st; and at that time, although the bankrupt firm was insolvent, there is no evidence that the partners knew that fact, and there is a plain inference that they then intended to pay for what they bought. The rule of the case last cited has frequently been enunciated in New York, and is, I think, the law of this state. Nichols v. Pinner, 18 N. Y. 295; Hotchkin v. Third National Bank, 127 N. Y. 329, 27 N. E. 1050. Doubt, however, has been produced by Whitten v. Fitzwater, 129 N. Y. 627, 29 N. E. 298. This is an ill reported memorandum decision, and in my opinion means no more than that evidence tending to show an intent not to pay when the goods were received (only six days after the purchase) might have been used by the jury as a basis for finding that the same intent existed six days before. Thus understood, I think the decision right, but under the circumstances of this case find myself unable to find evidence or draw an inference favorable to the existence of the necessary

intent on August 31st. Whitten v. Fitzwater, however, has been understood by others than the petitioners as sustaining their doctrine.

The exact point here under discussion was considered in Starr v. Stevenson, 91 Iowa, 684, 60 N. W. 217, where the court held that:

"The intent never to pay for the goods has sometimes been treated as a false representation and sometimes as a fraudulent concealment; but in either event it must precede the sale. * * * A contrary doctrine to that here declared seems to be announced in Whitten v. Fitzwater. * * * We do not think that case announces a correct rule, and must decline to follow it."

Burrill v. Stevens, 73 Me. 395, 40 Am. Rep. 366 (cited in the Iowa decision), refers fully to the cases, both English and American, sustaining the doctrine above set forth, which in my judgment has only been doubted in New York through bad reporting.

In practice, the petitioners' demand is especially vicious in bankruptcy. It is notorious that mercantile contracts for future deliveries, often many months distant, or extending over a long period of time, are the rule rather than the exception.

That a contract for "spring delivery" made in perfect honesty in October may be avoided because an expert investigation after bankruptcy in May renders it probable or certain that, when goods were delivered in April, the vendee was insolvent, and therefore should have imputed to him an intent not to pay, cotemporaneous with delivery, is intolerable. Such proceedings would render every mercantile failure a mockery to creditors who had given no credit or sold on short time. Yet to this extent would the doctrine contended for lead the court.

The petition is denied.