### In re MARENGO COUNTY MERCANTILE CO.

(District Court, S. D. Alabama, N. D.    October 5, 1912.)

No. 929.

1. SALES (§ 46*)—FRAUD—RECLAMATION OF GOODS.

　　Representations as to the financial status of a buyer, made as a basis for credit and known by the person making them to be false, and but for which the sale would not have been made, are fraud sufficient to entitle the seller to reclaim the goods.

　　[Ed. Note.—For other cases, see Sales, Cent. Dig. § 95; Dec. Dig. § 46.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. SALES (§ 46*)—RESCISSION—FRAUD—FALSE REPRESENTATIONS AS TO CREDIT.

False representations as to a buyer's credit, made to induce a sale of goods, in order to authorize the seller to rescind and reclaim the goods, must be willfully false, or such that the buyer did not believe them to be true, or made without reasonable grounds to believe them to be true, whereby the seller was deceived and induced to consummate the sale; the buyer having either knowledge or reasonable grounds to believe his insolvency and intending not to pay for the goods at the time they were bought.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 95; Dec. Dig. § 46.*]

3. SALES (§ 52*)—GOODS SOLD TO BANKRUPT—RECLAMATION—FRAUD—EVIDENCE.

Evidence *held* insufficient to show that a sale of goods to a bankrupt was induced by fraudulent representations as to the bankrupt's solvency at the time of the sale, so as to entitle the seller to reclaim the goods from the bankrupt's trustee.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 118–144, 1045; Dec. Dig. § 52.*

Misrepresentation and concealment by vendee of goods as to financial condition as affecting validity of contract of sale, see note to In re Pierce, 87 C. C. A. 538.]

4. BANKRUPTCY (§ 178*)—SALE OF GOODS—NATURE OF INSTRUMENT—POSSESSION OF BUYER—VALIDITY.

Petitioner sold merchandise to a bankrupt under contract providing that, in case the bankrupt should become insolvent or attempt to sell or dispose of the goods in any other way than in due course of trade, all the bankrupt's indebtedness to the petitioner should immediately become due, and that it might take immediate possession of all goods of every kind shipped by petitioner to the bankrupt and credit it at the invoice price on the indebtedness. Petitioner never took possession, but the bankrupt remained in possession and made sales in the usual course of trade until dispossessed by its receiver and trustee in bankruptcy. *Held*, that the contract was in substance a chattel mortgage and void as to creditors acquiring rights by bankruptcy proceedings before petitioner took actual possession.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 221, 264–274, 283, 284; Dec. Dig. § 178.*]

Petition to Review Order of the District Court of the United States for the Northern Division of the Southern District of Alabama, in Bankruptcy.

In the matter of bankruptcy proceedings of the Marengo County Mercantile Company. Reclamation proceeding by the Page Woven Wire Fence Company. Petition to review a referee's order denying the relief prayed. Affirmed, and petition dismissed.

Mallory & Mallory, of Selma, Ala. (Charles L. Robertson, of Adrian, Mich., of counsel), for petitioner.

Pettus, Fuller & Lapsley, of Selma, Ala., for trustee.

TOULMIN, District Judge. This is a reclamation proceeding brought by the Page Woven Wire Fence Company, a corporation, against the trustee of said bankrupts on a petition praying that the petitioners may have a lien upon the funds of said bankrupt estate to the amount and value of certain goods, consisting of woven

wire fencing, purchased by the bankrupts from the petitioners, and that said trustee be directed to pay the same to the petitioners; they claiming said goods as belonging to them. The petitioners base their claim on the ground that the bankrupt was insolvent at the time of the purchase of such goods, wares, and merchandise, and that this insolvency was known to it at the time of the purchase. Petitioners allege that said Marengo County Mercantile Company, the bankrupt, upon false and fraudulent representations, induced petitioners to sell and deliver to it the said goods mentioned, and wrongfully, fraudulently, and with intent to deceive and defraud petitioners, and knowing that petitioners relied upon the truth of the representations so made, induced them to sell and deliver said goods and merchandise to the said bankrupt, with the intent and design not to pay for them. This petition is, in substance and effect, a proceeding brought to rescind and set aside the sale of the goods to said bankrupt, and to recover the proceeds of their sale made by the trustee in bankruptcy. The referee dismissed the petition, and the case is here on a petition to review such action of the referee.

[1] "It is well settled that representations as to the financial status of a buyer made as a basis of credit, and known by the party making them to be false, and but for which the sale would not have been made, are fraudulent, and entitle the seller to reclaim the goods so obtained by fraud." In re J. S. Patterson & Co. (D. C.) 125 Fed. 564.

[2] In Donaldson v. Farwell, 93 U. S. 631, 23 L. Ed. 993, it was held to be established that what entitles a vendor to disaffirm a contract of sale and recover his goods consists in the vendee's inducing the vendor "to sell him goods on credit" when he was (a) insolvent, (b) concealed his insolvency, and (c) did not intend to pay for what he bought. In re Levi & Picard (D. C.) 148 Fed. 655.

But "to entitle a seller of goods to rescind the sale for fraud, there must have been an undisclosed knowledge of insolvency and an intention not to pay for them on the part of the purchaser when the goods were bought." In re Levi & Picard (D. C.) 148 Fed. 654.

In the absence of fraud in making the statement reclamation should not be allowed. In re Levi & Picard (D. C.) 148 Fed. 654; Ellet-Kendall Shoe Co. v. Ward, 26 Am. Bankr. R. 114, 187 Fed. 982, 110 C. C. A. 320.

"The representations must be willfully false, or must have been such that the buyer did not believe to be true, or had no reasonable grounds to believe to be true, and by means whereby the seller was deceived, and thereby induced to consummate a sale he otherwise would not have made." In re Roalswick (D. C.) 110 Fed. 639.

And it has been held that:

"A known condition of insolvency at the time of the purchase, and the failure of the bankrupt to disclose such condition to the claimant, cannot

be regarded as fraudulent. The law, having in view the ordinary conduct of business affairs, draws a distinction in matters of this kind between withholding information and making false statements for the purpose of deceit." In re Davis (D. C.) 112 Fed. 296.

[3] The real question presented by the petition and in the brief of counsel for petitioners is:

"Does the evidence show that the Marengo County Mercantile Company, by false and fraudulent representations of material facts, obtained from the petitioners the goods, wares, and merchandise, the proceeds of the sale of which are claimed?"

Under the allegations of their petition, the petitioners must establish these several propositions to entitle them to rescind the sale in question, and to obtain an order for the payment of the sum of money claimed by them therein: (1) That the bankrupt was insolvent at the time of the purchase of the goods, wares, and merchandise; (2) that the bankrupt concealed its insolvency from the petitioners, which insolvency was known to the said bankrupt at the time of said purchase; (3) that false and fraudulent representations were made by it with the intent to deceive and defraud petitioners, and were so made to induce the petitioners to sell and deliver to said purchaser the goods in question, with the intent and design not to pay for them.

The referee has failed to certify to the judge the question presented for review, except as to whether or not the order made by him, disallowing the petition, was correct. And there is no *summary* of the evidence relating thereto. "Both of these provisions are important and required, and should be carefully observed. The summary of the evidence is required in order to save the judge the labor of examining what is often a mass of testimony on many different questions, and of extracting so much as may be relevant to the point immediately in hand. The summary may also be valuable as showing what evidence has been considered by the referee before coming to a conclusion." In re Kurtz (D. C.) 125 Fed. 992; Crim v. Woodford, 136 Fed. 38, 68 C. C. A. 584; General Order, or Rule 27 (18 Sup. Ct. viii), in Bankruptcy.

However, the case is before me, and I have carefully examined and considered it.

The referee expresses the opinion that the evidence is sufficient to find that at the time of the sale the bankrupt was insolvent. He has furnished no *summary* of the evidence relating thereto. Assuming that the petitioners have established that proposition, and that the referee's finding on it is correct, as I do, it does not follow that the bankrupt concealed its insolvency from the petitioners, or had knowledge of its insolvency at that time. George F. Conant, the president of the bankrupt company, and who purchased the goods from one Edwards, the agent and traveling salesman of the petitioner, was called as a witness by the petitioners. He testified that on September 22, 1910, the date of the purchase of the goods, his company was "in good shape"; that its assets were greater than its liabilities. He also testified that business was

good, prospects and collections also good, in September, 1910, and at the time these goods were bought. He also testified that he made no special representation of any kind in reference to the solvency or financial condition of the Marengo County Mercantile Company to Edwards, the salesman of petitioners, at the time he placed the order for the goods with him on September 22, 1910; that he was not asked for a statement on the subject, and he made none. Edwards, the salesman of petitioners, who procured the order for the goods from Conant, corroborates in substance the latter's evidence in regard to what occurred at the time the order was given. He, as a witness for petitioners, testified that Conant did not tell him that his company had any special amount of assets or was solvent, in terms, but gave him to understand that it was financially in good shape; that he told him he was an officer in a bank there, and in that way gave him to understand that the sale was a good one. He testified no statement was made by Conant in reference to the solvency of his company, and he requested none. But it was his understanding from what was said by Conant, which was that he was an officer of a bank. From this he was given to understand that the firm was in good shape, and he considered the sale a good one. The evidence shows that Edwards sought Conant and solicited the order for the goods. He stated that he wrote to petitioners "he thought the company was good for the bill as it was well rated, was doing a tremendous business, had an elegant stock of goods, and that Conant seemed to be a good business man."

The evidence fails to satisfy me that the bankrupt made any false statements or was guilty of any positive fraud at the time of the purchase of the goods. As said by the court in Re Aarons, & Co., 28 Am. Bankr. R. 400, 193 Fed. 646, 113 C. C. A. 514:

"Fraudulent concealment in this case must be established by silence, if at all. But we think it is not so established, because we are unable to see that the bankrupt was under any obligation to speak or to disclose its financial condition to the petitioners; no request for any statement having been made."

I agree with the referee in his opinion that the evidence is not sufficient to find that the bankrupt had the intent and design not to pay for the goods at the time of their purchase, or had then no reasonable expectation of being able to do so.

L. B. Robertson, the manager and treasurer of petitioners, testified that he had special charge of the acceptance and approval of all orders and the making and signing of all contracts with customers of his company. He said Edwards made the contract involved here subject to his (witness') approval. The contract was received by him at his office in Adrian, Mich., on September 24, 1910, for acceptance and approval. Before doing so, he stated it was necessary for him to be satisfied of the financial standing and credit of the Marengo County Mercantile Company. He immediately consulted the published book of commercial ratings of bankers, merchants, etc., issued by the Bradstreet Company, and found that

said bankrupt company was given a rating of "T–D," which is es-
timated worth $10,000 to $20,000, with a second or fair credit. Wit-
ness stated that he then requested from the Bradstreet Company,
at its office at Montgomery, Ala., a special report in writing show-
ing on what such credit rating was based, and received a special
report from them, a true copy of which is annexed to and made
a part of his deposition. He testified that relying wholly on such
published rating, and signed report made by the Marengo County
Mercantile Company to the Bradstreet Company, he approved the
contract on September 26, 1910, and instructed shipment immedi-
ately under the contract, which was made on October 3, 1910. It
does not appear from the testimony of this witness when he request-
ed from the Bradstreet Company, at their office in Montgomery, Ala.,
the special report in writing referred to; but it does appear there-
from that the contract and order for the goods were signed at
Linden, Ala., on September 22, 1910, that they were received by
mail by the witness at Adrian, Mich., on September 24, 1910, and
that he accepted and approved the contract on September 26, 1910,
and ordered the goods shipped immediately. This witness testi-
fied that in granting credit and shipping these goods he relied on
the contract as to their right to claim a return of the goods, and as
to the financial responsibility of the parties, on information of the
Bradstreet Company in their published book of September, 1910,
and special information as shown in "Exhibit C." If the special
information mentioned was the special report he requested from
the Bradstreet Company, and on the strength of which he approved
the contract on September 26, 1910, I am unable to see how he
secured such special report in so short a time, in view of the evi-
dence in the case. He received the contract from Alabama on
September 24th, mailed on September 22d. He requested from
Bradstreet Company the special report not earlier than the 24th,
and yet he approved the contract on the 26th of September, relying
wholly on Bradstreet Company's rating and on such special re-
port as to the financial responsibility of the parties. The evidence
is that it takes about two days for a letter to come by mail from
Adrian, Mich., to Montgomery, Ala., and as many days for a re-
ply to be received by mail at Adrian, Mich. The evidence of G.
M. Williams, superintendent of the local office of Bradstreet Com-
pany at Montgomery, Ala., is that their office obtained from Ma-
rengo County Mercantile Company a report or statement of its
financial condition, dated February 4, 1910. It was received by
mail on February 10, 1910, and was the only report from that com-
pany during the year 1910. Witness said he could not swear that
the Montgomery office of the Bradstreet Company furnished the
petitioners or L. B. Robertson, their treasurer, a report covering
the financial condition of said Mercantile Company directly. He
said:

"If the Montgomery office got such a request from them for this report
it came by mail, and if a reply was made it was sent by mail. If they have
the information wanted, they answer the day the request is received. If

a special report is asked for, it is always a week or ten days before we can get up the information for such a report."

This witness also testified:

"That by the usual route of travel it would take a letter about two days to come from Adrian, Mich., to Montgomery, Ala., and in like manner it would take about two days returning."

If witness Robertson requested the special report from Bradstreet Company at Montgomery, Ala., on September 24th, the day he received the contract and order for the goods, and the contract was approved on September 26th and goods ordered shipped, then such action of Robertson could not have been at all predicated on such special report or information as stated. The contract was approved in two days after it was received for approval, and it would have taken at least four days to have received the special report after request. There is evidently some mistake or error in this statement of the witness. Moreover, Exhibit C, designated by witness Robertson as a true copy of the special report referred to, shows upon its face the date of September 9, 1910, as, presumably, the date of the "T–D" rating by Bradstreet Company; and, on the back thereof, at the beginning of a printed form of letter from Bradstreet Company addressed to Page Woven Wire Fence Company, is the date *March 7, 1911,* as presumably the date of transmittal of such special report to petitioners at Adrian, Mich., upon which report witness says he relied in granting credit to the bankrupt on *September 26, 1910.*

[4] The contract under which the petitioners contend that they have a right to reclaim the goods sold and delivered under the contract to the Marengo County Mercantile Company provides that said company shall sell said goods only in the usual course of trade, and that, in case said Mercantile Company shall become insolvent or attempt to sell or dispose of the goods in any other way except in due course of trade, all of the said buyer's indebtedness to petitioners shall immediately become due and payable, and that the said petitioners shall take immediate possession of all goods of every kind shipped by them to the said buyer and credit the buyer at the invoice price therefor on the said indebtedness.

The goods were purchased and received under these conditions. They were sold, and being sold by the buyer in accordance with said conditions, and those unsold remained and continued in the possession of the buyer until dispossessed by the receiver and trustee in bankruptcy.

This contract was, in substance and effect, a chattel mortgage on said goods.

A mortgage on a stock of merchandise, which expressly or impliedly provides that the mortgagor shall remain in possession of the property until condition broken, or the mortgagee in his own interest chooses to dispossess him, is, before such possession is taken, void, as a matter of law, as to purchasers and creditors of the mortgagor. The retention of possession by the mortgagor (the

bankrupt), with the power of disposition by sale, makes the mortgage ineffectual as against creditors who assert a claim before the mortgagee takes actual possession. The proceeding in bankruptcy amounted to an effectual sequestration of the property, and it was a seizure for the benefit of all of the creditors of the bankrupt. The instrument is fraudulent in law, and void as to creditors, who acquired rights before the mortgagee takes actual possession. Here the mortgagee never took possession; but the mortgagor (the buyer) was to remain in possession and to make sales of the property in the usual course of trade, and did so remain and make sales until dispossessed by the receiver and trustee in bankruptcy. In re First Nat. Bank, 135 Fed. 62, 67 C. C. A. 536; In re Bazemore (D. C.) 189 Fed. 236; Johansen Bros. Shoe Co. v. Alles (C. C. A.) 197 Fed. 274.

If the insolvency of the bankrupt, at the time the goods were purchased, has been shown, I do not find from the evidence that there was any fraudulent concealment of it. I am inclined to think that the bankrupt did not know it was bankrupt until its property was attached by creditors, and it was put into bankruptcy.

The order of the referee is affirmed, and the petition dismissed. with costs.