GAINESVILLE NATIONAL BANK ET AL. V. BAMBERGER, BLOOM & CO.
No. 6409.

   1.   **Fraudulent Misrepresentations in Buying Goods.**—Representations as to
the financial status of a buyer made as a basis of credit and known by the party mak-
ing them to be false, and but for which the sale would not have been made, are fraud-
ulent, and entitle the seller to reclaim the goods so obtained by the fraud.

   2.   **Same.**—It is not necessary that the misrepresentations should have been made
directly to the seller and during the negotiations for the purchase in order to entitle
the seller imposed upon and induced to sell to avoid and cancel the sale.

   3.   **Representation as to a Fact.**—The status of the debtor is a fact, and a rep-
resentation as to that status is the declaration of a fact.

   4.   **Misrepresentations.**—A misrepresentation made to one person, not with a view
of reaching another, can not be available to one acting upon it to cancel a contract en-
tered into by reason of it.    But a third person to whom they were not directly made can
maintain an action of deceit and seek the cancellation of a contract made by him if it

appear that the defendant's false statements were made with a.direct intent that plaintiff should act upon them in the manner which occasioned the injury.

5. **Representations to Commercial Agency.**—Insolvent merchants, for the purpose of maintaining their credit, made false statements to a commercial agency as to their financial ability and condition, expecting their statements to be circulated and acted upon; and having by means thereof made a purchase of goods, the seller discovering the fraud can reclaim his goods, even against an attachment levied by other creditors upon them.

6. **Same—Fact Case.**—See facts held sufficiently showing fraud so as to give the seller the right to cancel the sale and reclaim the goods sold after they had been seized in attachment.

APPEAL from Cooke. Tried below before Hon. F. E. Piner.

On the 5th day of August, 1887, the Gainesville National Bank and other creditors of Goldstein & Melasky sued out and had levied writs of attachment upon the entire stock of dry goods belonging to said Goldstein & Melasky, they being at said time merchants doing business in Gainesville. After the inventory had been taken and other attachments run on the stock, the appellees, on the 30th day of August, 1887, filed their claim, affidavit, and bond to try the right of property to a portion of said stock of goods described in said proceedings. On November 1 the appellees appeared and tendered and filed issues in which they set out that they sold to Goldstein & Melasky the goods described in said bond and affidavit, and that such sale was made upon a representation of solvency and financial condition made by Goldstein & Melasky to Dun's Mercantile Agency August 20, 1886, to which agency appellees were subscribers. That Goldstein & Melasky so represented themselves to be solvent and worth the sum of $66,000 over and above their liabilities; that appellees believed said representations to be true, and relying on the same sold the goods to them that are in controversy in this case, but that the said representations were false, and that in truth and in fact they were at such time insolvent, and said representations were known to be false by Goldstein & Melasky at the time they were made; and by reason of such false and fraudulent representations no title in said goods passed to them, and appellants acquired no rights in the same by virtue of their levy upon them.

On the 8th day of November, 1887, appellants tendered and joined issues with appellees, not pleading any affirmative matter except the fact of their debts, suits, attachments, levies, etc., and that the goods at the time of the levy on the same were the property of Goldstein & Melasky, and denying allegations of fraud and false statements by Goldstein & Melasky to obtain said goods. With the pleadings in this condition the case was tried before the court without a jury on the 9th day of November, 1887.

Judgment was rendered for claimants, the appellees, for the goods, and the defendants appealed.

*Potter, Potter & Eddleman,* for appellants. —1.  If a statement made to a commercial agency can in any event be construed to be a representation to a subscriber, it must be first shown that the party making the statement knew of the subscriber, and so made the statement with the intent of influencing that one.  1 Benj. on Sales, pp. 563, 564, and authorities cited; 2 Pome. Eq. Jur., sec. 879.

2.  In order for a false representation to avail in canceling a contract it must be shown to be material, and in order to be material must be made during the negotiations regarding the trade, or so intimately connected therewith as to be a part of the transaction.  2 Pome. Eq., sec. 879; Jackson v. Stockbridge, 29 Texas, 394; Lemmon v. Hanley, 28 Texas, 219; Hall v. Johnson, 41 Mich., 286.

3.  In order to be material the representations must be as to facts, and not an expression of judgment, and must be of matters of trust and confidence.  1 Benj. on Sales, p. 561; Belcher v. Castello, 122 Mass., 189; Morse v. Shaw, 124 Mass., 59; Homer v. Perkins, 124 Mass., 431; Sledge v. Scott, 56 Ala., 202; Rigler v. Flickinger, 55 Pa. St., 279; Watts v. Commins, 59 Pa. St., 84; Mulbery v. Watson, 6 Met., 246; Vessey v. Daton, 3 Allen, 380; The State v. Phifer, 65 N. C., 321; Long v. Woodman, 58 Me., 49; 1 Benj. on Sales, p. 562, note.

*Lanius & McCans* and *Stuart, Bailey & Harris,* for appellees. —1. Where a merchant, knowing the object of a commercial agency, makes representations to it for the purpose of obtaining credit, and a third person relying and acting upon the truth of such representations extends the credit, and such representations prove to be false at the time they were made, no title passes from the vendor to the vendee.  1 Benj. on Sales, 4 ed., p. 564, note 11; Eaton v. Avery, 83 N. Y., 31; 7 Fed. Rep., 622; Commonwealth v. Call, 21 Pick., 523.

2.  When a false representation made by one person to another for the purpose of inducing a contract is relied on and acted upon by the person to whom it is made, and he is deceived thereby, this will avoid the contract, even though the party making the representations may have acted in good faith and believed the same to be true at the time he made them. Pendarvis v. Gray, 41 Texas, 326; Loper v. Robinson, 54 Texas, 510; Sayles' Treatise, 2 ed., sec. 84.

3.  A contract for the purchase of goods on credit made with intent on the part of the purchaser not to pay for them is fraudulent, and if the purchaser is insolvent and knows his inability to pay, it is equivalent to an intention not to pay.  Donaldson v. Farwell, 93 U. S., 631; Talcott v. Henderson, 31 Ohio St., 162; Wiggin v. Day, 75 Mass., 97; Doe v. Sanborn, 3 Allen, 182; Ayers v. French, 41 Conn., 142; Stewart v. Emerson, 52 N. H., 301; Burrill v. Stephens, 73 Me., 395; Fox v. Webster, 46 Mo., 181.

4. A purchase made when the purchaser knows he is insolvent and with the purpose not to pay is void, even though there may not have been any fraudulent representations at the time of purchase. Donaldson v. Farwell, 93 U. S., 631; Ayers v. French, 41 Conn., 142.

5. An attaching creditor is not a purchaser for value as against a defrauded vendor. 1 Benj. on Sales, 570, and note; Wiggin v. Day, 75 Mass., 97; Express Co. v. Willie, 79 Ill., 92.

HOBBY, JUDGE.—Two well defined issues were submitted and litigated in this action of the trial of the right of property.

The appellees Bamberger, Bloom & Co., who were claimants of the property attached by appellants, contend, first, that in the spring of 1887 Goldstein & Melasky, who were the defendants in attachment, purchased the goods in controversy from them, and that the sale was made by them upon the faith of the representations of said Goldstein & Melasky as to their financial standing and solvency communicated to Dun's Mercantile Agency, of New York, in August, 1886. That appellees were subscribers to said agency and relied upon said representations, and save for them they would not have sold the goods. That the representations were false, and so known to be when made. It was contended in the second place that the goods were purchased at a time when the purchasers knew that they were insolvent and unable to pay for the same, and that they did not intend at the time of the purchase to pay for them.

To this it is urged in reply by appellants that if a statement made to said agency can be construed to be a representation to a subscriber, it should be shown that the party making such statement knew of the subscriber, and made the representations with a view of influencing such subscriber. And, further, that the representations referred to were but matters of opinion and not the statement of facts, and that they should be made during the negotiation regarding the trade or so connected therewith as to constitute a part of the transaction.

The facts upon which the appellees rely in this case as establishing the existence of fraud are: That in July, 1885, the firm of Goldstein & Melasky, then engaged in business in Gainesville, Texas, made a statement through Melasky, a member of the firm, to Dun's Commercial Agency to the effect that he brought into the firm $17,000. That there was stock on hand to the amount of $20,000, and $11,000 in accounts. The indebtedness of the firm was represented to be about $17,000, which included a private debt of $2000. Their assets above liabilities showing by this statement $31,000. About a year subsequent to the above, in August, 1886, another statement is made by Melasky to said agency, in which he represented that there was then $45,530 in stock, and $29,670 in notes and open accounts which were good, two dwellings in Gainesville worth $10,000, and 113 acres of improved land, valued at $10,000, constituting the assets.

Their liabilities were represented to be about $28,973, leaving an excess. of assets amounting to $66,227. Statements, it seems, were made annually to this agency, purporting to show the financial status of Goldstein & Melasky.

It further appears from the testimony that in August, 1886, Melasky called at the commercial agency of Dun, in New York, to explain a discrepancy in the former statement. This explanation is that the statement made by him in July, 1885, did not embrace his "personal real estate" of $20,000 and the net profits of the business of the preceding year, amounting to $15,000, which items, added to the $31,000 shown by his July, 1885, statement as the assets of the firm, would make the present surplus of $66,000 above their liabilities.

Such were the representations made as to the financial status and the solvency of the firm of Goldstein & Melasky, upon which the proof shows the appellees relied in making the sale of the goods involved in this trial, and without which they would not have sold them. The testimony of Melasky is to the effect that he made these statements to the commercial agency of Dun for the purpose of obtaining credit, and that he knew at the time that these facts would be communicated to the subscribers of said agency; and appellees were subscribers to this agency, from which they derived to a great extent their information of the financial standing of the former.

It is not necessary to reproduce in detail the estimates and calculations in evidence which authorized the conclusion by the court of the falsity of the representations above mentioned.

Melasky's evidence discloses the fact that when he was in New York in the spring and summer of 1887 his firm was so pressed for money that he resorted to the process of "kiting," and which is not considered fair financial dealing among merchants. It consisted of his drawing drafts on his Texas house for money to pay drafts in New York, and his Texas house would pay the drafts by drawing on him in New York, he having no money in New York, and his house in Texas being similarly situated. It was shown that about the time of the purchase of the goods the liabilities of Goldstein & Melasky were about $78,000 and their assets about $72,000. The dwelling houses included in the statements made to the agency were not subject to execution.

In the year 1887 it was proved that the firm was largely indebted to appellants, and rendered a statement showing their liabilities to be about $30,000 less than their assets, upon the faith of which the bank loaned them money. This was eight or nine months subsequent to their report to the agency showing a surplus of $66,000. This statement to the bank, it was testified by the president, was untrue. In the preceding fall, 1886, a statement by Melasky to a Baltimore commercial agency showed their assets to be between $20,000 and $30,000. In the summer of 1887 the

stock of the firm was found to be $20,000 short, but no explanation was made of how that occurred.

The evidence plainly shows that but for the representations made by Melasky the contract of sale would not have been consummated, and there is nothing in the proof which would justify the inference that the sale of the goods would have been made by appellees without these representations upon which they relied.    It follows therefore necessarily that such being the effect of the statements made to the agency, they were material.    McAlier v. Horsey, 35 Md., 439–52.    The law governing the sale of personal property is well established to the effect that the mere expression of an opinion as to values, which proves to be incorrect or false, does not come within the rule applicable to the fraudulent representation of a material fact.    But the status of the debtor is a fact, and a representation as to that status is the declaration of a fact.    Benj. on Sales, 562, note. In Bradley v. Love, 99 Illinois, 234, worthless stock was represented as worth a large sum, and mortgages for $12,000 on land worth $2000 were represented as good.    These statements were held clearly fraudulent

No inflexible rule can with accuracy define all of the circumstances in which the representations of fact or of matters of opinion may become fraudulent.    Benj. on Sales, 562, note.

But representations of the financial status and solvency of Goldstein & Melasky, under the circumstances in this case, were clearly statements of fact and not mere expressions of opinion.

It is not essential that the misrepresentations should have been directly made to the appellees by Goldstein & Melasky, and during the negotiations regarding the contract of sale, for them to avail in canceling such contract.

As a general proposition it may be correct, as contended by appellants, that a misrepresentation made to one person, not with a view of reaching another, can not be available to another who may have acted on it to cancel a contract entered into by reason of it; but it is sound doctrine that a third person to whom they were not directly made can maintain an action of deceit and seek the cancellation of a contract made by him, if it appear that the defendant's false representations were made with a direct intent that he should act upon them in the manner which occasioned the injury.    Eaton v. Avery, 83 N. Y., 31.

If the false representations be made with a view of reaching the third person to whom it is repeated, and for the purpose of influencing him, they will afford a cause of action.    1 Pome. Eq., sec. 879.

An illustration identical with this phase of the case will be found in the case of Eaton v. Avery, 83 New York, 31.    The representations charged in the case cited, as in this case, were not made to the appellee directly, but to the Dun Commercial Agency, and by it communicated to appellees, who sold the goods, relying upon the statements so made.

It was in that case contended, as in this, that assuming the representations to have been false, they were not sufficiently connected with the contract of sale.

It was there held that it was not essential that the representations should be addressed to the party directly who seeks a remedy for having been deceived and defrauded by means thereof; that if they were false and so known to be by the party making them, and were made with the intent that they should be communicated to and believed by persons interested in ascertaining the pecuniary responsibility of the firm, and with the intent to procure credit and defraud such persons thereby, and they were relied on by the seller and the sale procured thereby, the plaintiff was entitled to recover.

In the case last cited it was said: "A person furnishing information to such agency in relation to his own circumstances, means, and pecuniary responsibility can have no other motive in so doing than to enable the agency to communicate such information to persons who may be interested in obtaining it for their guidance in giving credit to the party; and if a merchant furnishes such an agency a willfully false statement of his circumstances or pecuniary ability, with the intent to obtain a standing and credit to which he knows he is not justly entitled, and thus to defraud whoever may resort to the agency and in reliance upon the false information there lodged extend a credit to him, there is no reason why his liability to any party defrauded by those means should not be the same as if he had made the false representation directly to the party injured."

Upon the other branch of the case—the known insolvency of Goldstein & Melasky at the time of the purchase of the goods and their alleged intention not to pay for them—it is only necessary to say of it that it is a question of fact to be found from all the circumstances developed by the proof—which proof in this case we are not prepared to say was not sufficient to support the decree, if the sufficiency of the proof upon either of the issues we have discussed is contested by appellant, which we do not understand to be done in this case.

"The mere insolvency of the purchaser, where no fraudulent purpose exists, as also the mere fact that the purchaser has knowledge that his debts exceed his assets, though the fact be unknown and uncommunicated to the vendor, will not vitiate the purchase," is certainly true.

So on the other hand, "an intention on the part of the purchaser not to pay for the goods, existing at the time of the purchase and concealed from the vendor, is such a fraud as will vitiate the contract." Talcott v. Henderson, 31 Ohio St., 164.

There is no error in the judgment, and we think it should be affirmed.

*Affirmed.*

Adopted April 22, 1890.