## In re J. S. PATTERSON & CO.

### (District Court, N. D. Texas. April 17, 1903.)

### No. 457.

1. BANKRUPTCY—FRAUDULENT PURCHASE OF GOODS—RIGHT TO RECLAIM.

Bankrupts, who were retail merchants, made a financial statement to a wholesale house as a basis for credit, which was signed, and stated that it was "a true and accurate statement of our assets and liabilities," and should stand as to all subsequent purchases unless notice was given of change, and they bound themselves to give such notice in case of any material change. In the itemized statement of liabilities was a question asking for the amount "due relatives," which was unanswered, although they at the time owed $3,500 to a relative. *Held* that, under the general representation that it was a true and accurate statement. the omission to answer such question was a concealment which was equivalent to a fraudulent representation, and entitled the creditor to reclaim goods which were shipped on credit in reliance on such statement.

2. SAME.

The shipment of goods three months after such statement was made, and in reliance thereon, without further inquiries, no notification of change having been given, was not such negligence on the part of the seller as to debar it from the right to rescind the sale.

In Bankruptcy. On certificate from referee.

Sam A. Leake, for petitioners.
Sidney L. Samuels, for trustee.

MEEK, District Judge. J. S. Patterson & Co., the bankrupts, were merchants doing business at Frost, Navarro county, Tex. Early in the year 1902, Feder, Silberberg & Co., a large mercantile firm doing business in Cincinnati, Ohio, received through one of their traveling

salesmen an order for goods from J. S. Patterson & Co. This order amounted to $1,133.10, and was sought on a credit. Feder, Silberberg & Co. immediately, and before extending the credit, instituted investigation, through the usual channels, to ascertain the financial standing and rating of J. S. Patterson & Co. Not being satisfied with the information secured through these channels, Feder, Silberberg & Co. called on J. S. Patterson & Co. for a financial statement of their affairs, and sent to them a blank form to be filled out. The letter accompanying the blank form requested that all questions in same should be answered "either in dollars and cents, or by the words 'No, None, Yes, or Nothing.'" J. S. Patterson & Co. complied with the request, and forwarded the following financial statement:

### Credit Department.

Statement made this 14 day of Feb. 1902, Feder, Silberberg & Co. Cincinnati, O., by J. S. Patterson of the firm of J. S. Patterson & Co. City of Frost, State of Texas, which firm is composed of the following persons (giving names in full), J. S. Patterson, and J. H. Patterson ....................
(Co-partnership) and engaged in the business of Dry Goods.
(   unlimited   )

### Resources:

| | |
|---|---|
| Cash on hand or in bank ............................................. | ...... |
| Cash value of merchandise on hand ................................ | $7,000 |
| Cash value of book accounts and notes that are good and collectible.... | 7,000 |
| Cash value lands, houses and other real estate........................ | 3,000 |
| Cash value of personal and all other property not specified above...... | 2,000 |
| Are all the above assets in your name? If any parts are owned jointly by husband and wife, so state here........................ | ...... |

### Liabilities:

| | |
|---|---|
| Amount of indebtedness on merchandise due ...................... | 1,500 |
| "    "    "    "    "    not due .................... | 500 |
| "    "notes or other obligations both due and not due............ | ..... |
| Number and amount of mortgages or deeds of trust held against real estate or personal property........................................ | ..... |
| Due relatives ....................................................... | ..... |
| Amount of security paper my name is on, due or not due............. | ..... |
| Amount of any other liability that I may be liable for................. | ..... |

### Resources Over Liabilities:

How long have you been in business? Four years in Frost.
Do you own storehouse and dwellings? Yes.
Amount of insurance on stock 5000. On storehouse 1500.

The above is a true and accurate statement of our assets and liabilities, and upon which we desire credit based, in our purchases from Feder, Silberberg & Co. and the same shall stand as to all subsequent purchases, unless at the time of such subsequent purchase or purchases we shall notify them of any change in our assets or liabilities, and hereby bind ourselves to give such notice in case of any material change in our pecuniary condition; otherwise all subsequent purchases to be made on the faith of the above statement.

Sign here full name of firm:     J. S. Patterson & Company.
By whom signed:     J. S. Patterson, a member of the firm.

Henry Hermann, credit man for Feder, Silberberg & Co., testified that on the strength of this statement his house shipped the bill of goods on February 20, 1902. Some time in May, 1902, another order for goods was received by the house, through its traveling salesman, for September delivery. This order amounted to $793.50, and the goods under it were duly shipped and delivered. J. S. Patterson

& Co. were adjudicated bankrupts on the 9th day of December, 1902. At the first meeting of creditors it developed from the testimony of J. S. Patterson that at the time of the making of the financial statement to Feder, Silberberg & Co. his firm was indebted to his cousin, L. E. Patterson, in the sum of $3,500; that the consideration for this indebtedness was borrowed money. The financial statement of J. S. Patterson & Co. was shown to be untrue and inaccurate in several respects, but it is not considered necessary to state or analyze such untruthful and inaccurate portions of the statement. Feder, Silberberg & Co. did not know of the indebtedness of J. S. Patterson & Co. to L. E. Patterson until the examination of the bankrupt at the first creditors' meeting. They at once filed their application before the referee to have the goods shipped to J. S. Patterson & Co. under the May order, that were on hand, segregated from the stock in the possession of the trustee of the bankrupt estate and returned to them, on the ground that the title thereto had not passed, by reason of the fraud perpetrated on them by J. S. Patterson & Co. This application was resisted by the trustee, and a hearing had on the issue thus made before the referee. Henry Hermann testified that in extending credit on the February and September shipments he relied on the truthfulness of the financial statement made in February; that he relied solely on that statement in extending credit on the September shipment; that, if he had known or discovered the statement to be false, he would not have relied upon it, nor would he have extended the credit; that he would not have given J. S. Patterson & Co. the line of credit he did, had he known they were indebted to a relative in the sum of $3,500. The correspondence in evidence tends to prove the February order had been accepted by Feder, Silberberg & Co. before the receipt of the statement, and that the sellers were only awaiting the arrival of certain goods to complete the order before making the shipment. However, the insistence of Feder, Silberberg & Co. upon a financial statement before any shipment of goods, and the entire course of dealing between the parties, stripped of the polite phrasing of commercial correspondence, clearly establishes the truthfulness of Henry Hermann's evidence, and that the Cincinnati house placed its main reliance and extended credit on the financial statement. J. S. Patterson testified that he knew of the indebtedness of $3,500 to his cousin at the time of making the statement, but "just kept it private." After hearing, the referee refused and dismissed the application, and the applicants complain and appeal from this ruling.

In order that the rights of all parties might be preserved pending this appeal, the referee ordered the property claimed by Feder, Silberberg & Co. to be appraised, but refused to separate and segregate it, because such segregation would involve loss and expense to the estate. In event the property of the estate is sold by order of the referee, funds arising from the sale of the goods claimed by Feder, Silberberg & Co. will be subject to the action of the court on this appeal.

It is well settled that representations as to the financial status of a buyer made as a basis of credit, and known by the party making

them to be false, and but for which the sale would not have been made, are fraudulent, and entitle the seller to reclaim the goods so obtained by fraud. Turner v. Ward, 154 U. S. 618, 14 Sup. Ct. 1179, 23 L. Ed. 391; In re Weil (D. C.) 111 Fed. 897; In re Epstein (D. C.) 109 Fed. 878; Gainesville National Bank v. Bamberger, Bloom & Co., 77 Tex. 48, 13 S. W. 959, 19 Am. St. Rep. 738; Lowdon et al. v. Fisk et al. (Tex. Civ. App.) 27 S. W. 180; Schwartz et al. v. Mittenthal et al. (Tex. Civ. App.) 50 S. W. 182; Schram et al. v. Strouse et al. (Tex. Civ. App.) 28 S. W. 262. Counsel for the trustee contends that the bankrupts, in failing to set opposite the words "due relatives" the amount owing L. E. Patterson, were not guilty of making a false statement or misrepresentation; that the bankrupts had been requested to answer the various interrogatories in a blank form by placing opposite thereto the figures in dollars and cents, or by answering "No, None, Yes, or Nothing," as the query and their financial condition might indicate; that their failure to place anything opposite the words "due relatives" gave notice to the parties seeking the statement that the bankrupts refused to answer the question, and that therefore the statement could not be relied upon as accurate and correct in that particular.

The financial statement of Patterson & Co. must be construed as a whole, and the general statement appended thereto must be considered in connection with the itemized statement under the heads of "Resources" and "Liabilities." They assert, over their signature, that they have set forth a true and accurate statement of their assets and liabilities, that they desire a line of credit based thereon, and that the statement shall stand as to all subsequent purchases unless at the time of such subsequent purchase or purchases they shall notify the sellers of any change in their assets or liabilities, and they bind themselves to give such notice in case of any material change in their pecuniary condition, and, in event no such notice is given, then all subsequent purchases are to be made on the faith of the statement given. In view of these representations and stipulations, it is my opinion Feder, Silberberg & Co. were justified in indulging the conclusion that J. S. Patterson & Co. owed nothing to relatives. They alone were in possession of the necessary information to make a true and accurate statement of the financial condition of their firm. They were invited to make such statement by distant merchants, in order that the latter might determine whether or not they would be willing to accept their orders and ship valuable merchandise to them on a credit. J. S. Patterson & Co. accepted the invitation, made a statement and represented it was true and accurate, and yet, owing a cousin a large sum of money, they placed no figures opposite the words "due relatives." It will be noticed that the words "true and accurate," as used, do not qualify the particular items of the statement, but qualify the "statement of our assets and liabilities," so that they vouch for the truthfulness and accuracy of the statement as a whole. Even though the failure to set forth the amount "due relatives" in the statement were not considered a positive misrepresentation on the part of J. S. Patterson & Co., yet under the circumstances it is such a suppression of the truth as amounts

to a suggestion of falsehood. In the case of Stuart v. Wyoming Ranch Company, 128 U. S. 383, 9 Sup. Ct. 101, 32 L. Ed. 439, Mr. Justice Gray, in delivering the opinion of the court, says:

"In an action of deceit it is true that silence as to a material fact is not necessarily, as a matter of law, equivalent to a false representation. But mere silence is quite different from concealment; aliud est tacere, aliud celare. A suppression of the truth may amount to a suggestion of falsehood; and if, with intent to deceive, either party to a contract of sale conceals or suppresses a material fact, which he is in good faith bound to disclose, this is evidence of and equivalent to a false representation, because the concealment or suppression is in effect a representation that what is disclosed is the whole truth. The gist of the action is fraudulently producing a false impression upon the mind of the other party; and, if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of plaintiff."

The failure of Patterson & Co. to set forth the amount due relatives, together with the general representations made at the end of the statement, clearly brings this case within the above rule.

It is also contended by counsel for the trustee that Feder, Silberberg & Co. were guilty of negligence in accepting the May order for goods to be shipped in September, without making additional investigation as to the financial condition of J. S. Patterson & Co.; that they should not have relied on the statement made in February as a basis of credit for goods ordered in May. The bankrupts had stipulated to notify them of any material change in their pecuniary condition. Even though this were not sufficient to relieve Silberberg & Co. from the exercise of care and diligence, yet the time intervening between the date of the statement and the date of the second order and the delivery of the goods under it was not sufficient to deprive them of the right to rely on it. Such statements are made as the basis for continuing credit, and it is not necessary that they should be made exactly at the time of the sale. Such a requirement would be unreasonable. The length of time that has elapsed since making the statement, within reasonable limits, is for the consideration of the court in passing upon the extent that the sale was actually influenced thereby. Lowdon et al. v. Fisk et al. (Tex. Civ. App.) 27 S. W. 180; Schram et al. v. Strouse et al. (Tex. Civ. App.) 28 S. W. 262.

I am of the opinion that the order heretofore entered by the referee overruling and dismissing the application of Feder, Silberberg & Co. is error, and should be set aside, and that an order should be entered allowing the application and directing the goods identified as belonging to Feder, Silberberg & Co. to be turned over to them, or, in lieu thereof, the amount of such goods upon sale by the trustee. The costs of this appeal will be taxed against the trustee.