Victor **FRANKFURT**, Appellant,

v.

Jimmie W. **WILSON**, Appellee.

No. 15942.

Court of Civil Appeals of Texas. Dallas.

Dec. 29, 1961.

Rehearing Denied Jan. 26, 1962.

J. Tom Sample, Dallas, for appellant.

Hutchison, Shipp & Look, Jack B. Look, Dallas, for appellee.

WILLIAMS, Justice.

Action on promissory note and for fraud. In his original petition Jimmie W. Wilson, as plaintiff, sued Victor Frankfurt, Martin Benno, and N. L. Reader, defendants, seeking a judgment, jointly and severally, based solely upon actionable fraud. In this petition plaintiff alleged that he was the owner of certain property located at 4032 Centenary Drive, University Park, Texas, hereinafter referred to as the Centenary property, and that on October 20th, 1958 he entered into a contract of sale with Benno, for a total purchase price of $36,000. He alleged that part of the consideration to be applied to the total purchase price, was a certain Vendor's Lien note payable to Benno, and executed by the defendant, Reader, as maker, in the sum of $12,000, said note being secured by collateral on Lots 5 and 6, Block 2, of the Stillmeadow addition, Dallas, Texas, hereinafter referred to as the Stillmeadow property. Plaintiff alleged that he accepted the $12,000 note upon the representations of the defendants Benno, Reader and Frankfurt, that Reader was solvent; that the property was worth in excess of $20,000; and that the defendant Reader had borrowed the sum of $12,000 on said property from Benno and was borrowing the sum of $4,000 from the Republic Bank in Dallas. Plaintiff alleged that such representations were false; that the defendants knew that such representations were not true and that but for said representations he would not have accepted the $12,000 note as part of the consideration for the sale of the Centenary property.

In his First Amended Original petition, plaintiff Wilson enlarged his cause of action by re-asserting his allegations of fraud and, in addition thereto, for the first time sued upon the $4,000 promissory note which had been executed by Reader as a part of the agreement to discount the $12,000 note in consideration for $4,000 cash borrowed from the Republic National Bank and a $4,000 second lien note, being inferior to

the $4,000 note and first lien given by transfer to the Republic National Bank by the defendant Reader in order to pay Wilson the $4,000 in cash. Wilson also pleaded, in the alternative, recovery based upon a certain bond executed by Frankfurt which had been given to secure the release of Lis Pendens notice filed by Wilson on the Centenary property. In this amended petition plaintiff sought judgment, jointly and severally, against all of the defendants, based upon the promissory note and also upon fraud as well as upon the bond.

. Following a non-jury trial the court entered judgment for Wilson against Reader on the $4,000 second lien note, and also judgment against Frankfurt on the note in the amount of $4,000, but allowed no recovery against Frankfurt on the bond. Judgment was rendered that plaintiff should take nothing against the defendant Benno, and no complaint is made here of that action. It had been stipulated and agreed by the defendant Reader that the $4,000 second lien note was past due and unpaid and that Wilson was entitled to a judgment thereon. Reader has not appealed from that portion of the judgment. Frankfurt appealed, contending that, as a matter of law, he is not liable on the note, and that there is no evidence to support the allegations of fraud which would make him responsible on that theory. Wilson, by a cross-point, contends that the court should have held Frankfurt liable on the bond.

By his first and second points of error appellant Frankfurt contends that the trial court erred in its conclusions of law No. 7 to the effect that an agency relationship existed between Reader and Frankfurt, because there is no evidence to support such conclusion, and further that the trial court erred in its conclusions of law No. 7, and in rendering judgment indicated thereon in favor of Wilson against Frankfurt in the amount of $4,000 on the second lien note signed by Reader, because the same is an erroneous conclusion of law. The facts are undisputed in this record that Frankfurt did not sign this note nor did he endorse the same or guarantee payment of the same.

We have carefully reviewed all of the testimony in this case and find no evidence to support appellee's contention that there was an agency relationship existing between Frankfurt and Reader insofar as the execution of this note is concerned. Even so, there could be no recovery under our law upon a promissory note against an undisclosed principal, said note being executed by the alleged agent. Our Supreme Court in Sanger v. Warren, Tex. Civ.App., 44 S.W. 477 and Burnett v. Atteberry, 105 Tex. 119, 145 S.W. 582 has held that where the agent for an undisclosed principal executes or endorses a negotiable instrument without naming his principal no liability on the instrument is imposed upon the principal. See also Texas Land and Cattle Co. v. Carroll & Iler, 63 Tex. 48; Moody-Seagraves Ranch v. Brown, Tex. Civ.App., 69 S.W.2d 840, err. ref., and Farrier v. Hopkins, Tex.Com.App., 131 Tex. 75, 112 S.W.2d 182.

Appellee, in his brief, frankly admits that the trial court committed error in basing the judgment against Frankfurt on the promissory note. Appellant's first and second points are, therefore, sustained.

Appellee contends, however, that even though the court committed error in basing his judgment against Frankfurt upon an erroneous theory, yet it is the duty of this Court to affirm the judgment of the trial court if there is any theory upon which the pleadings and evidence will support the judgment against Frankfurt. Purnell v. Gulihur, Tex.Civ.App., 339 S.W.2d 86; Golden State Mutual Life Insurance Co. v. Adams, Tex.Civ.App., 340 S.W.2d 77; Moore v. Ham, Tex.Civ.App., 342 S.W.2d 825. We agree with appellee that this is the law and that, pursuant to Rule 434, Texas Rules of Civil Procedure, the error of the court in rendering judgment against Frankfurt on the note would become harmless if there is any possible theory of recovery against Frankfurt demonstrated by the

pleadings and evidence in this case. Appellee insists that judgment against Frankfurt is justified upon the theory of conspiracy and fraud practiced upon Wilson by Frankfurt and his alleged agents, Benno and Reader.

■ We find nothing in this record to substantiate appellee's contention of conspiracy. Conspiracy has been defined as an agreement, manifesting itself in words and deeds, by which two or more persons confederate to do an unlawful act, or to use unlawful means to do an act that is lawful. 12 Tex.Jur.2d, p. 327, § 1. The evidence in this case wholly fails to support appellee's contention of a conspiracy, as such.

We turn now to the theory of fraud as a possible basis of recovery against Frankfurt. Appellant by his third through tenth points of error contends that there is no evidence of probative force in this record to support the trial court's findings of fact and conclusions of law having to do with representations that might amount to fraud. By counterpoint, appellee contends that there is evidence that Frankfurt, individually and through his agents Benno and Reader, made certain false representations to Wilson which induced him to accept the $12,000 note on the Stillmeadow property, and also to subordinate and reduce the note to $8,000 in order to obtain an additional $4,000 in cash. The alleged fraud consisted of purported misrepresentations made by Frankfurt and the other two defendants as to (1) the solvency of Reader, (2) the value of certain property referred to as the Stillmeadow property, (3) the intent of Reader to build a motel on the Stillmeadow property, and (4) the fact that Reader had made arrangements to borrow $4,000 from the Republic National Bank on the Stillmeadow property, and upon which Wilson claimed to have relied in accepting a $4,000 second vendor's lien note secured by a deed of trust on the Stillmeadow property, signed by defendant Reader, as a portion of the price paid by Benno to Wilson for the Centenary property.

The record does not yield to a simple statement. Frankfurt owned the property known as Stillmeadow and by deed dated March 30, 1958, conveyed such property to Benno. Benno delivered to Frankfurt a note, unsecured, in the sum of $8,000. On April 4, 1958 Benno conveyed the Stillmeadow property to Reader for a consideration of one vendor's lien note in the principal sum of $12,000. On October 28, 1958 Wilson and wife entered into a sales contract with Benno wherein Benno agreed to purchase the Centenary property for a consideration of (1) $5,161 cash; (2) the assumption of the unpaid portion of a $20,000 first lien in favor of Metropolitan Savings and Loan Association; and (3) the transfer and assignment of the $12,000 vendor's lien note on the Stillmeadow property. This contract was negotiated through real estate agents representing both parties. On October 24, 1958 Wilson and wife executed a warranty deed covering the Centenary property to Benno for the consideration recited in the sales contract. On the same date, Reader assigned to Wilson the $12,000 vendor's lien note covering the Stillmeadow property. Being desirous of obtaining more cash Wilson agreed to reduce the $12,000 note to $8,000 providing he was to receive $4,000 in cash and an additional note for $4,000 which would be inferior to the original $12,000 note and its lien.

In order to obtain the necessary cash Reader borrowed $4,000 from the Republic National Bank and delivered to that bank his note, endorsed by Frankfurt. Wilson, in turn, assigned to Republic National Bank the $12,000 original vendor's lien note on the Stillmeadow property to secure the first $4,000 of said note. Reader then gave Wilson his note in the sum of $4,000 secured by a deed of trust on the Stillmeadow property, but being inferior to the lien owned by Republic National Bank. On October 28, 1958 Benno conveyed to Frankfurt the Centenary property. The $4,000 note to the Republic National Bank was not paid by Reader when due and Frankfurt paid the same.

With reference to his conversation with Wilson, prior to the sale of the Centenary property to Benno, Frankfurt testified:

"Q All right; I believe you testified in October, 1958, that you were talking to Mr. Jimmie Wilson in reference to his selling his house on Centenary to Mr. Benno, is that correct, sir?

"A I was talking and—when?

"Q October, 1958; I believe you testified you had talked to Mr. Wilson in reference to his selling the property to Mr. Benno and—

"A No, Jimmie Wilson called me about Mr. Reader and I told him the truth; he paid nothing down and they intended to build a motel out there.

"Q But out there—you mean that Mr. Reader intended to build a motel on the Stillmeadow Acres property; is that correct?

"A That was the intent, the way I heard it."

Concerning further statements with Wilson he testified:

"A He called me previous and called to check up on Mr. Reader and to find out how his credit was, Yes, sir.

"Q And so forth and so on?

"A He asked me what the value of the property was out there and I said, 'I don't know.'

"Q Well, did you tell him—what did you tell him, if anything, about Mr. Reader?

"A I said, 'He is a good man.' I said, 'Jimmie, if somebody called me about you I would say you are a good man,' and that is as far as I know. I said, 'The man don't have any money; he has to depend on finances if he is going to build a motel; he has to have enough to cover the loan, the buildings plus the land, because he bought it with nothing down.'

"Q But you did tell Mr. Wilson Mr. Reader was going to build a motel on the property?

"A I told him that I thought that was the intent, I can't tell you what Mr. Reader is going to do.

"Q All right; didn't you tell him it was a valuable piece of property, in your opinion?

"A I did.

"Q And well worth the $12,000.00 note?

"A No; I told him that—to find out; to send out an appraiser, that I wasn't an appraiser and didn't know the value and didn't care, because I sold it for $8,000.00 previously.

"Q Uh-huh, Now, did you tell him that when you sold it previously you had sold it to Mr. Benno?

"A I think so.

"Q Had you ever been in any transaction with Mr. Benno previous to this time, Mr. Frankfurt?

"A No, sir.

"Q You had not?

"A None, just a friend."

Reader testified that he did not tell Mr. Wilson anything concerning the value of the property and denies that he told Wilson he was going to build a motel on the Stillmeadow property. He further denied that he was acting for Frankfurt in making the deal. Benno testified that he made no representations of any kind to Wilson, and knew nothing about Reader's solvency when he transferred the $12,000 note to Wilson. He specifically denied that he made any representations to Wilson or anyone else concerning Reader's solvency or the value of the Stillmeadow property.

Wilson testified concerning his conversation with Frankfurt, as follows:

"Q Now before you accepted that note, tell me what, if anything, did you do with reference to ascertaining the solvency of Mr. N. L. Reader?

"A Well, I called Mr. Victor Frankfurt, with whom I had had a speaking acquaintance for about twenty years and asked him if he knew Mr. Reader; he said he did. I asked him if he worked for Mr. Reader or if Mr. Reader worked for him and he said 'No'. He officed with his son but he was a good man, reliable and dependable.

"Q Yes, sir.

"A That is about the substance of it.

"Q I will ask you whether or not you talked to Mr. Frankfurt about Mr. Reader going to build a motel on the property securing the $12,000.00 note?

"A That was mentioned to Mr. Frankfurt; yes, sir.

"Q Yes, sir.

"A He said he understood Mr. Reader was going to build a hotel out there.

"Q I will ask you whether or not anyone—whether Mr. Reader or Mr. Frankfurt represented to you that this was a good note when you took it?

"A Well, if you have reference to Mr. Frankfurt, he said the property— it was the Oak Cliff property, I call it.

"Q Yes, sir.

"A Said it was valuable property, the Highway being built through there coming, I believe, from Waxahachie."

On cross-examination Wilson testified, significantly, as follows:

"Q Did Mr. Frankfurt make any statements to you about his (Reader's) financial responsibility or how much money he had in the bank or what he was worth or anything of that kind?

"A No; I don't think so.

"Q All right; he just told you that he was a good man?

"A Uh-huh.

"Q All right, now, did you ask anyone else about Mr. Reader's financial responsibility?

"A Yes, I asked Mrs. Currin.

"Q And I believe she has already testified as to what she told you?

"A Uh-huh.

"Q And was there anyone else that you asked about it?

"A No.

"Q All right; so that all you knew at that time was that—you really didn't know anything about his financial responsibility; all that you knew was that Mr. Frankfurt told you he thought he was a pretty good man?

"A *That is not why I accepted the deal.*

"Q *All right; tell us why you did accept it?*

"A *This property in Oak Cliff, the Stillmeadow Acres property, was represented to me as being valuable property. The Highway being run through there, that that would make it more valuable, and Mr. Reader represented to me that he would borrow $4,000.00 from the Republic Bank on that property, first lien, and I happen to know that a bank doesn't loan more than fifty per cent on any property. So I figured my loan was secure."* (emphasis supplied).

Kathryn Currin, a real estate agent representing Wilson, testified that she never had

a conversation with Frankfurt concerning the deal. She said she did talk to Reader who told her the Oak Cliff or Stillmeadow property was "very valuable property" and that he was fixing to build a motel on the property.

Wilson admitted that, prior to his acceptance of the note in question, and its subordination to the Republic National Bank, that he made no independent effort to ascertain Reader's solvency nor to seek an independent appraisal of the Stillmeadow property.

In the light of this evidence it is incumbent upon us to determine whether the same, considered in a most favorable light, amounts to any evidence of actionable fraud on the part of Frankfurt. The essential elements of actual fraud based on a false representation are a false statement of a material fact made to be acted upon and actually believed and acted on with consequential injury to the person acting thereon. "It is said that to state a cause of action for fraud that is based on false representations, the plaintiff is required to show that the defendant made or was connected with the making of the representation; that the representation was as to a material fact; that the representation was false at the time it was made; that the representation was made with the intent to induce the plaintiff to do or refrain from doing some act; that the representation was relied on by the plaintiff—in other words, that the plaintiff believed it to be true and was induced thereby to act or refrain from acting; and that the plaintiff thereby suffered damage or injury." 25 Tex.Jur.2d § 13, pp. 626–627.

■■■ It is a general rule that to be actionable, a false representation must have constituted the affirmation of a fact, as distinguished from the mere expression of an opinion. 25 Tex.Jur.2d § 23, p. 662. In the absence of confidential relationship between the parties, a mere expression of an opinion as to value that proves to be incorrect or false is not, generally, considered a misrepresentation of a material fact on which

reliance may be placed. Gainesville Nat. Bank v. Bamberger, 77 Tex. 48, 13 S.W. 959; 25 Tex.Jur.2d § 51, p. 692. For a statement to form a basis for fraud it must be more than a mere expression of an opinion. For example, a statement that the writer of the letter thinks that another person is able to be responsible for goods that the other may order has been said to amount to no more than the expression of an opinion. 25 Tex.Jur.2d § 64, p. 709.

■■■ Of course, it is elementary, that to establish the elements of actionable fraud such must be shown by full, clear and satisfactory prooof. Fraud is never presumed, and when it is alleged the facts sustaining it must be clearly shown. Continental Transfer and Storage Co. v. Midcity Realty Company, Tex.Civ.App., 348 S.W.2d 56; Fernandez v. Cano, Tex.Civ.App., 108 S.W. 2d 310; Whitsel v. Hoover, Tex.Civ.App., 120 S.W.2d 930. While we are fully cognizant of the rule in cases of fraud that broad latitude is granted in receiving evidence, both direct and circumstantial, that does not change the burden of proof on the part of the plaintiff to establish fraud by a preponderance of the evidence. There is no presumption of fraud. The contrary is true. It is the duty of courts to presume a want of fraud rather than an existence of fraud in a transaction and therefore unless the evidence clearly shows the necessary elements of fraud it is the duty of a court to presume the absence of such fraud. Hawkins v. Campbell, Tex.Civ.App., 226 S.W.2d 891.

■■■ With these well-established rules of law in mind we have carefully considered the record in this case and reach the conclusion that the appellee Wilson has wholly failed to establish by evidence of probative force any evidence of actionable fraud against Frankfurt. His admitted statements that Reader was "a good man" or that the Stillmeadow property was "valuable property" amount to nothing more than statement of opinions rather than statement of existing material facts. More-

over, when Wilson inquired of Frankfurt concerning Reader's solvency and the value of the Stillmeadow property Frankfurt suggested to him that he secure an independent appraiser. Such does not indicate the mind of one set upon a devious scheme or fraud. Even considering Wilson's testimony in the most favorable light, as opposed to that of Frankfurt and others, the alleged representations of Frankfurt amount to nothing more than expression of opinions or expression of future events based upon hearsay. The value of the Stillmeadow property was as susceptible of being ascertained and determined by Wilson as by Frankfurt. There is no confidential relationship which would give rise to a reliance by Wilson on opinion statements by Frankfurt, and Wilson frankly stated he did not rely solely on same but primarily on statements of Reader concerning the Republic Bank loan.

There must be more than a scintilla of evidence of fraud. The evidence must have some probative value, as a matter of law, in order to raise an issue to be decided by the trier of fact. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

We hold therefore, that there is no evidence of probative value in this record to support appellee's contention of actionable fraud against appellant Frankfurt. Appellant's points three through ten are sustained.

We also sustain appellant's points eleven and twelve to effect that there is no evidence to support the trial court's conclusion of law concerning agency relationship between Frankfurt, Reader and Benno. While the various transactions are complicated and confused, to say the least, we find no evidence of probative value to support the contention that there was an agency relationship between these parties. Even so, and should we be mistaken in this holding, there is no testimony of fraudulent representations on the part of the alleged agents which would bind Frankfurt. What we have said above concerning statements made by Frankfurt apply equally to any statements alleged to have been made by Reader or Benno.

Appellee, in his counterpoint, contends that the trial court should have rendered judgment against Frankfurt on the theory of the bond executed by Frankfurt given for the release of the Lis Pendens notice covering the Centenary property. The trial court, in its findings of fact, found that Frankfurt did file a bond in order to secure the release of the Lis Pendens notice, such bond being conditioned that Frankfurt would pay the amount of any judgment sought to be enforced by Wilson against Frankfurt, Benno and Reader, in this cause, in the event that final judgment should be entered in favor of Wilson in such suit. However, the trial court specifically refused to make a conclusion of law holding the recovery on this bond. We must overrule appellant's counterpoint. The record reveals that at the time the Lis Pendens bond in question was executed by Frankfurt the only pleading before the court was the plaintiff's original petition in which the plaintiff did not allege any cause of action or suit on the promissory note, nor did plaintiff include therein any prayer for judgment or foreclosure on the note. Subsequent to the filing of the Lis Pendens bond the plaintiff's first amended original petition was filed wherein for the first time, Wilson alleged and undertook to prove a cause of action and recovery on the promissory note in question. This constituted an entirely new proceeding and cause of action. An action on a bond of this kind and character must necessarily be strictly construed in accordance with the terms of the bond itself. It cannot be said that the parties to this bond were obligating themselves to pay a judgment other than a judgment based upon the pleadings at the time the bond was made. It cannot be logically said that Frankfurt, by executing the bond, thereby agreeing to pay a judgment rendered on the pleadings as they then existed, also bound himself to pay a judgment based upon any future pleadings, especially those evidencing a new and different cause

of action. It is our opinion that the trial court was correct in not rendering judgment for Wilson against Frankfurt on the bond in question.

From what we have said the judgment of the trial court, in as much as it affects Benno and Reader, is affirmed and the judgment of the trial court as to Frankfurt is reversed and here rendered that appellee take nothing against Frankfurt.

Affirmed in part and reversed and rendered in part.