Opinion approved by the Court.

Thomas D. SUMNERS et al., Appellants,

v.

H. R. HOHENBERGER, Jr., et al.,
Appellees.

No. 13874.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 7, 1962.

Rehearing Denied April 25, 1962.

Boyle, Wheeler, Gresham, Davis & Gregory, A. W. Worthy, San Antonio, for appellant.

Clemens, Knight, Weiss & Spencer, Edward R. Finck, Jr., San Antonio, for appellee.

POPE, Justice.

H. R. Hohenberger, Jr., and Honorbilt Homes, Inc., in a jury trial, recovered judg-

ment for $58,400 actual damages against Realty Improvement Company, Inc., for breach of contract, and $10,000 punitive damages for a claimed independent tort, against Thomas D. Sumners and Realty Improvement Company, Inc. Defendants, on appeal, argue that the contract was void for uncertainty, that the contract was one which called for a future agreement, that the claimed damages were speculative, and that the jury answers about fraud, as a basis for punitive damages, do not support plaintiffs' right to recover.

Hohenberger, on September 12, 1957, entered into contracts to buy two tracts of land. He planned to erect homes on the land and to sell them. After obtaining the contracts and before the closing dates provided in the contracts, he contacted Sumners. He showed Sumners the contracts and proposed that he finance the project. After investigation, Sumners agreed to do so. He then prepared a contract which the parties executed, and it is the basis of this suit.[1] The contracts for the purchase of the lands were then closed. One grantor conveyed to Hohenberger, who in turn conveyed the property to Realty Improvement Company, Inc., the company through which Sumners did business. The other grantor, on instructions from Hohenberger, conveyed direct to Realty Improvement Company, Inc. Sumners and Hohenberger retained an architect and obtained plans for homes which would be built on the subdivision. The plans showed that the houses would be in the $10,000 price range. They dealt with and received from the F.H.A. a plat of the proposed subdivision. It showed a suggested plan for 195 lots. Defendants proceeded to develop the subdivision as their own in disregard of the plaintiffs and the contract.

■ The jury found all issues about the contract in favor of plaintiffs. The defendants urge that the contract is too uncertain and is therefore void as a matter of law. The contract is not void. All parties were experienced in the business, were familiar with the facts, and what was expected of each party to the contract. Sanderson v. Sanderson, Com.App., 130 Tex. 264, 109

---

1. "AGREEMENT: REALTY IMPROVEMENT COMPANY, INC., HONORBILT HOMES, INC., AND H. R. HOHENBERGER, JR.

This agreement is made between Realty Improvement Company, Inc. (RICO) and Honorbilt Homes, Inc., with Honorbilt Homes, Inc. obligations herein personally guaranteed by H. R. Hohenberger, Jr. In connection with the subdivision of approximately forty-five (45) acres of land under Earnest Money Contract from T. C. Vogt and L. W. Flinn, and the construction, financing and sales of homes to be constructed thereon, it is agreed as follows:

1. Honorbilt Homes, Inc., through H. R. Hohenberger, Jr., will personally supervise all construction, financing and sales of homes and subdivision of the land.

2. RICO will furnish equity capital to finance the project and all contracts and titles will be in the name of RICO as owner, contractor and builder.

3. Profits from this project will be divided sixty percent (60%) to RICO and forty percent (40%) to Honorbilt Homes, Inc., after all expenses, including all direct costs, bookkeeping costs, an allowance of six percent (6%) or net invested capital except capital invested in water mains, and sales and advertising costs as agreed upon between RICO and Honorbilt Homes, Inc. There shall not be charged into expenses of this project any depreciation, car expense, or any other indirect cost either by RICO or Honorbilt Homes, Inc.

4. Light lines and gas mains shall be charged as expenses when paid for and treated as income when refunded.

5. Expenditures for water mains shall be treated as expense when incurred. Water main refunds, when and if received, will not be considered divisible income.

6. RICO will have the option, but not the obligation to take over rights under the Flinn Earnest Money Contract upon payment to Honorbilt Homes, Inc. or H. R. Hohenberger, Jr. of a sum equal to the amount of earnest money put up on this tract.

7. All earnest money deposits, payments on contracts, etc., are to be turned over promptly to RICO for deposit."

S.W.2d 744. Hohenberger, the owner of two earnest money contracts, was to manage the development and Sumners was to provide the needed funds. They had done the same thing before. What Sumners and RICO proceeded to do after RICO had the title to the land, is what Hohenberger and Honorbilt Homes, Inc., would have done if defendants had not breached the contract. Similar contracts have been adjudicated. The contract was certain enough. Pace Corporation v. Jackson, 155 Tex. 179, 284 S.W.2d 340; Thompson v. Duncan, Tex. Com.App., 44 S.W.2d 904.

The point that the contract is void because it was a mere contract to make future agreements is based upon the phrase in the third paragraph, "as agreed upon between RICO and Honorbilt Homes, Inc." As a matter of construction, the third paragraph sets forth how the profits would be divided, and it itemizes the things which would be counted as expenses. These matters were not dependent upon future agreements. The phrase is limited to the sales and advertising costs only. Damages under the contract were proved by adequate evidence.

The point that the damages are speculative assumes that the contract was void for uncertainty. The reasoning is that the contract failed, and there were no damages proved which would support a recovery upon quantum meruit. Since the contract did not fail by reason of uncertainty, there, of course, was no need for proof of damages under quantum meruit.

■ In our opinion, however, the court should not have allowed Hohenberger and Honorbilt Homes, Inc., recovery of $10,000 as punitive damages. Plaintiffs pleaded an independent tort as a basis for recovery of punitive damages. The jury found in favor of the plaintiffs that Sumners made a representation to plaintiffs, that the representation was false, that plaintiffs believed it was true, that it was a material inducement, and that plaintiffs relied upon it. However, the jury also found in answer to another issue, that plaintiffs would have entered into the contract in spite of the representation. Thus is presented the claim by defendants, appellants here, that the last stated issue defeats recovery of punitive damages based upon an independent tort. If plaintiffs had not requested that issue, the others would probably have supported a judgment. Hickman v. Cooper, Tex.Civ.App., 210 S.W.2d 858, 862. However, it was submitted and we can not ignore the answer, because it is more specific than the one about reliance generally. The jury found that the misrepresentation was not the thing which induced the contract. By their answer they say that plaintiffs relied upon the misrepresentation, but not very much, and they would have made the contract anyway. Under that finding, plaintiffs failed to prove the tort. Avery Co. of Texas v. Harrison Co., Tex.Com.App., 267 S.W. 254, 257; Graves v. Haynes, Tex.Com.App., 231 S.W. 383; Buchanan v Burnett, 102 Tex. 492, 119 S.W. 1141, 1142; Gainesville Nat. Bank v. Bamberger, 77 Tex. 48, 13 S.W. 959, 960; Walton v. Steffens, Tex.Civ.App., 170 S.W. 2d 534.

The judgment for punitive damages is therefore not supported by the findings. We reform the judgment and affirm the judgment for actual damages in the sum of $58,400. Costs are charged equally against the appellants and appellees.

### On Motion for Rehearing.

Defendants Sumners and RICO urge that we should pass upon the trial court's order striking their defensive pleading that the plaintiffs agreed to a termination of the contract. That defense is of importance, since it would, if found by the jury, be a complete defense. We have re-examined the history of the pleadings in an effort to determine whether, as ruled by the trial court, the defendants injected that defense into the case in violation of Rules 4 and 63, Texas Rules of Civil Procedure.

We find that long before the trial date, which was February 13, 1961, the defendants pleaded that plaintiffs had agreed upon

a termination of the contract. They alleged in their first amended original answer which was filed on October 22, 1959: "Upon being so advised the said HOHENBERGER agreed definitely to such termination." Our search of the record shows that certain exceptions were leveled at other allegations, but plaintiffs did not except to the quoted sentence. The exceptions were heard on February 3, 1961, and after the court's orders were made, the defense of agreed termination was still standing in the defendants' pleadings.

Defendants then amended to comply with such exceptions as had been sustained, and in repleading they repeated that defense which had not yet been attacked. They did this by filing their second amended original answer on February 6, 1961, with leave of the court. In this pleading they alleged: "Upon said notification plaintiff H. R. HOHENBERGER, JR., agreed to the said termination of the contract." On February 9, four days before trial, the plaintiffs filed their second supplemental petition in reply to the defendants' second amended original answer. In that pleading the plaintiffs, for the first time, excepted to the defense of an agreed termination. For the first time they stated that such a pleading failed to allege consideration, and that the claimed oral contract of termination violated the statute of frauds. When faced with those exceptions, defendants at once amended to meet them. Their amendment was filed on the same day the exceptions were filed.

A trial court may exercise its discretion in permitting pleadings to be filed within seven days of trial. Close examination of these pleadings, however, shows that the defendants actually had pleaded that there was an agreed termination, and plaintiffs did not except to that pleading until four days before trial. It was the plaintiffs, therefore, and not the defendants who were late in filing their pleadings. Defendants had asserted the defense continuously since October 22, 1959, but were not called upon to meet the exceptions until February 9,

1961, and they met them by pleading more fully on that same date.

The court, therefore, heard the plaintiffs' exceptions which were filed too late, but refused to permit defendants' amendments which could not have been made earlier. " * * * if the pleadings are still open for action on exceptions, they are equally open for amendments thereto." Caperton v. Thorpe, Tex.Civ.App., 240 S.W.2d 329, 330; Andrews v. Austin Motor Truck Co., Tex.Civ.App., 259 S.W.2d 772. In other words, defendants had a defense properly pleaded until four days before trial. Then, for the first time, exceptions were leveled against the defense, and the defendants were denied the right to amend. In our opinion, it was the plaintiffs instead of the defendants who were late in filing their pleadings. The order striking the defendants' amendment was in error. Because the defendants were deprived of a vital defense, we grant appellants' motion for rehearing and remand the case for new trial.